STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EDWARD MULDOWNEY, DEFENDANT-APPELLANT.

Argued April 24, 1972—Decided June 21, 1972.

*Mr. Donald S. Levenson* argued the cause for defendant-appellant (*Messrs. Melnik, Tarter, Muller & Morgan,* attorneys; *Mr. Donald S. Levenson* on the brief).

*Mr. Jerome J. Cohen,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. A. Donald Bigley,* Prosecutor of Camden County, attorney).

The opinion of the Court was delivered by

PROCTOR, J. Defendant, Edward Muldowney, was indicted for unlawful possession with intent to utter and expose to the view of another obscene or indecent pictures in violation

of *N. J. S. A.* 2A:115–2.[1] Prior to trial defendant's motion to suppress evidence seized as a result of a search of his home and for the return of such property was denied. Thereafter, defendant was convicted by a jury. He received a suspended sentence of between two and three years conditioned upon his payment of a $500 fine and obtaining psychiatric treatment. The Appellate Division in an unreported opinion affirmed the conviction. Defendant appealed to this Court. *R.* 2:2–1(a).

The sufficiency of the evidence is not in dispute and the relevant facts are quite simple. On November 18, 1968, Thomas Watson was indicted by a federal grand jury for using the mails for the transmission of pornographic films. That same day Postal Inspector Similes accompanied by Detective Queiroz of the Camden Police Department arrested Watson at his home in Camden. Upon his arrest Watson cooperated with the officers and showed them two films, "Swimsuit Girl" and "Phantom F-----," by the use of a projector. According to the officers the films depicted males and females engaged in sexual acts and various forms of perversion. Watson made a written statement that these films and others found in his house were purchased or received on consignment from the defendant. An affidavit of Detective Queiroz incorporating this statement was the

---

[1]The statute provides:

Any person who, without just cause, utters or exposes to the view or hearing of another, or possesses with intent to utter or expose to the view or hearing of another, any obscene or indecent book, publication, pamphlet, picture, or any mechanical or electronic recording on a record, tape, wire or other device, or other representation however made or any person who shall sell, import, print, publish, loan, give away, or distribute or possess with intent to sell, print, publish, loan, give away, design, prepare, distribute, or offer for sale any obscene or indecent book, publication, pamphlet, picture or other representation, however made, or who in any way advertises the same, or in any manner, whether by recommendation against its use or otherwise, gives any information how or where any of the same may be had, seen, heard, bought or sold, is guilty of a misdemeanor.

basis for the issuance of a search warrant by a judge of the City of Camden Municipal Court on the same day. The warrant directed the search of defendant's premises for "certain property used as a means of committing a misdemeanor in violation of the laws of the State of New Jersey, to wit: 2A:115-2, Uttering, exposing, or selling obscene literature or pictures."[2]

Later that afternoon Queiroz, Similes and another postal inspector searched defendant's home pursuant to the warrant. The officers seized 177 films and a number of pictures,

---

[2]The full text of the warrant is as follows:

SEARCH WARRANT

MUNICIPAL COURT OF THE CITY OF CAMDEN

STATE OF NEW JERSEY)
COUNTY OF CAMDEN )
 ss.

To: Det. Clement Queiroz

Complaint on oath and in writing having been made before me, Judge of the Municipal Court of The City of Camden, New Jersey, on this day by you, alleging that you have good reason to believe and do believe that in and upon certain premises within The City of Camden, in this county and state, to wit: The premises known as 1645 Broadway in said City of Camden, and more particularly described as follows: residence of William Muldowne [sic] a postal employee, there has been and now is located certain property used as the means of committing a misdemeanor in violation of the laws of the State of New Jersey, to wit: 2A:115-2, Uttering, exposing or selling obscene literature or pictures.

YOU ARE HEREBY COMMANDED to enter and search, with the necessary and proper assistance, the place hereinabove named for the property specified, serving this warrant and making the search in the afternoon and to take into your possession all such specified property which may be found on the said premises, to the end that the same may be dealt with according to law.

YOU ARE FURTHER COMMANDED, in the event that you seize any of the above described articles, to give a copy of this warrant, together with a receipt for the property so seized, to the person from whom it is taken or in whose possession it is found, or in the absence of such person to leave a copy of this warrant, together with such receipt, in the place where the said property is found.

YOU ARE FURTHER COMMANDED to execute this warrant within 20 days from the issuance hereof, and forthwith make return thereof to me with your report of the execution of this warrant and a written inventory of the property seized hereunder by you.

writings, and others items, including film projectors, a Polaroid camera, and a transistor radio. None of the films were viewed by the officers prior to the seizure.

At the trial four of the films taken from defendant's home and one film, "Swimsuit Girl," given to the police by Watson, were introduced in evidence and their content viewed by the jury. In addition to the films other items taken from defendant's home including magazines, photographs, booklets, papers listing the films and two incriminating letters were admitted in evidence. Defendant objected to their admission.

Thomas Watson testified for the State that he had received the film "Swimsuit Girl" from the defendant. He said that he had obtained films from the defendant three or four times within the course of a month, receiving approximately 15 films. He said he had given the defendant a $10 or $15 deposit on "Swimsuit Girl," a color film, and had agreed to pay $20 more for it. He testified he usually paid $20 to the defendant for black and white films.

Defendant testified on his own behalf that he was a collector of films. He said he merely gave Watson duplicates which Watson promised to replace with films of his own. He admitted that in the interim Watson gave him money as security for the films. He also admitted he traded some films with others besides Watson through advertisements in a magazine.

On this appeal defendant first urges that his conviction should be reversed because the materials taken from his home should have been suppressed as they were seized pursuant to a defective search warrant. We agree. The Fourth Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment, *Mapp v. Ohio,* 367 *U. S.* 643, 81 S. Ct. 1684, 6 *L. Ed. 2d* 1081 (1961), provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things*

*to be seized."* (Emphasis added.)[3] The Amendment was adopted as a result of the reaction to searches conducted under the infamous writs of assistance of the British Crown. The authors of the Bill of Rights intended these words to guarantee that the people should be secure from general searches and unrestrained seizures by officers acting under the unbridled authority of a general warrant. See *Stanford v. Texas,* 379 *U. S.* 476, 481, 85 S. Ct. 506, 13 *L. Ed. 2d* 431, 434–435 (1965).

In the present case the warrant essentially directed Detective Queiroz to seize any material found by him to be in violation of *N. J. S. A.* 2A:115–2. The warrant gave no guidelines to the officer as to what kind of items were to be seized. It delegated to him the function of deciding whether the materials were obscene. Such a warrant is constitutionally intolerable because it strikes at the foundation of the Fourth Amendment's requirement that warrants describe the items to be seized with particularity. *United States v. Marti,* 421 *F. 2d* 1263, 1268 (2nd Cir. 1970) ; *People v. Rothenberg,* 20 *N. Y. 2d* 35, 281 *N. Y. S. 2d* 316, 317, 228 *N. E. 2d* 379, 380 (1969) ; see *Stanford v. Texas, supra; Marcus v. Search Warrants,* 367 *U. S.* 717, 81 S. Ct. 1708, 6 *L. Ed. 2d* 1127 (1961) ; *Marron v. United States,* 275 *U. S.* 192, 48 S. Ct. 74, 72 *L. Ed.* 231 (1927).

The evil inherent in a warrant which vests the executing officer with so broad a discretion as he had here is evident. The warrant leaves the protection of the constitutional rights afforded the person to be searched to the whim of that officer. We do not mean to suggest, however, that a minute and detailed description of the items to be seized is necessary. But the warrant must be sufficiently definite so that the officer executing it can identify the property sought with reasonable certainty. For example, the warrant

---

[3]*Article* 1, *Section* 7 of our State Constitution also requires that warrants shall particularly describe the place to be searched and the things to be seized.

here could have directed the seizure of films depicting natural or unnatural sex acts. See *Marti, supra* 421 F. 2d at 1268. Such a direction while giving the officer some discretion is not unreasonably broad.[4]

The danger inherent in a general warrant is magnified in cases which involve freedom of expression protected by the First Amendment. To leave to the executing officer the duty of determining what is not protected by the First Amendment could result in the seizure of materials falling within its protection. Freedom of expression is too deeply entrenched in our constitutional heritage to be paid such haphazard treatment. See *Marcus, supra* at 367 *U. S.* at 731–732, 81 S. Ct. at 1716, 6 *L. Ed. 2d* at 1136–1137; *State v. Hudson County News Co.*, 41 *N. J.* 247, 260–262 (1963).

█ Even if the affidavit which supported the warrant were sufficiently detailed it would not cure the defect in the warrant. Specificity is required in the warrant so that the discretion of the executing officer may be limited. *Marti, supra* 421 *F.* 2d at 1268. In any event, the affidavit here contained essentially the same conclusory language as the warrant.[5]

---

[4] We recognize of course that in cases such as the present one the officer cannot determine the content of the films by looking at the films on their reels. The use of a projector or handviewer would be necessary to accomplish this task. However, this procedure is not unduly burdensome when it is possible constitutionally protected expression may be seized. In *United States v. Marti*, 421 *F.* 2d 1263 (2nd Cir. 1970), before seizing any films the executing officer viewed each with a handviewer. This procedure enabled him to exclude from seizure "ordinary cartoon films" falling within the First Amendment's protection. *Id.* at 1267.

[5] The pertinent part of Detective Queiroz's affidavit reads:

[T]here has been and now is located certain property used as the means of committing a misdemeanor in violation of the laws of the State of New Jersey, to wit: Uttering, exposing or selling obscene literature or pictures. That the facts tending to establish the grounds for this application, and the probable cause of deponent's belief that such grounds exist, are as follows: A written statement by a Mr. Thomas W. Watson of 2903 High St. this city who was charged and

 

██ We hold that the items taken from the defendant's home were improperly admitted in evidence because they were seized pursuant to a constitutionally defective search warrant.[6] The materials, not being *per se* contraband, *Stanley v. Georgia,* 394 *U. S.* 557, 89 S. Ct. 1243, 22 *L. Ed. 2d* 542 (1969), must be returned to the defendant. See *R.* 3:5–7(b) ; *Gable v. Jenkins,* 309 *F. Supp.* 998, 1001 (N. D. Ga. 1969), *aff'd.,* 397 *U. S.* 592, 90 S. Ct. 1351, 25 *L. Ed. 2d* 595 (1970).

The film "Swimsuit Girl" was not taken during the search of the defendant's home and thus was properly admitted in evidence. Had the jury decided that this film was obscene, the defendant could have been convicted because, coupled with Watson's testimony concerning his purchases from defendant, the State had produced sufficient evidence of a violation of *N. J. S. A.* 2A:115–2. While in our judgment "Swimsuit Girl" must be considered obscene under any standard,[7] A Book Named "John Cleland's *Memoirs of a Woman of Pleasure" v. Massachusetts,* 383 *U. S.* 413, 86 S. Ct. 975, 16 *L. Ed. 2d* 1 (1966) ; *Roth v. United States,* 354 *U. S.* 476, 77 S. Ct. 1304, 1

---

indicted on this date and then found with a quantity of pornographic films, which tells that these films were purchased or held on consignment by Mr. Watson from a Bill Stoker of 1645 Broadway, Camden. Mr. Stoker was identified as a Mr. William Muldowne [sic] of that address by Postal Insp. Similes.

Watson's statement reads : "I Thomas W. Watson after having been told that I do not have to say anything that could be used against me do voluntarily wish to cooperate with Camden Police and tell that all the obscene films that were found today in my house were either purchased or held on consignment by me from Bill Stoker 1645 Broadway Camden."

[6]Defendant does not raise the issue nor, because of our disposition of the case, need we decide whether seizures in obscenity cases such as the present one must be preceded by an adversary hearing as to the obscenity of the materials to be seized. See *Gable v. Jenkins,* 309 *F. Supp.* 998, 1001 (N. D. Ga. 1969), *aff'd.,* 397 *U. S.* 592, 90 S. Ct. 1351, 25 *L. Ed. 2d* 595 (1970).

[7]An examination of the film itself reveals that a jury could find the film to be obscene.

L. *Ed. 2d* 1498 (1957); *State v. Hudson County News Co., supra,* we have no way of knowing whether the conviction in this case was based upon a jury finding that this film was obscene rather than on a finding that the material seized under the warrant was obscene. Therefore, we cannot conclude that the admission in evidence of the material seized under the warrant was harmless error beyond a reasonable doubt. The case must thus be remanded for a new trial.

■ Defendant argued before the Appellate Division and raises here the contention that *N. J. S. A.* 2A:115-2 is unconstitutional under the holding of *Stanley v. Georgia, supra,* 394 *U. S.* 557, 89 S. Ct. 1243, 22 *L. Ed. 2d* 542. The Appellate Division found this contention without merit. We agree.

In *Stanley* pornographic films were found in defendant's home and he was convicted under a Georgia statute for possessing obscene matter. The Supreme Court reversed the conviction holding that mere possession of obscene material in the privacy of one's home cannot constitutionally be made a crime.

Defendant contends that *N. J. S. A.* 2A:115-2 is unconstitutional in that it allows prosecution for possession of obscene materials or for a private exchange between two adults of obscene materials. He argues both of these acts are constitutionally permissible under *Stanley.* The first part of defendant's contention is without merit. Under the statute possession of obscene material must be accompanied by an "intent to utter or expose the same to the view or hearing of another." Defendant was not charged or convicted of mere possession. The conviction was based upon evidence of his uttering obscene matter to another.

■ The second part of defendant's contention is also erroneous. Defendant argues the logical extension of *Stanley* is that only exposure of obscene material to unwilling adults, to the general public or to children is within the power of the states to prohibit. He contends that if mere possession

of obscene material cannot be prohibited one should be permitted to sell such matter to another consenting adult. Whatever the scope of *Stanley,* later Supreme Court cases make it clear that the distribution of obscene materials to anyone, including consenting adults, may be constitutionally prohibited. *United States v. Reidel,* 402 *U. S.* 351, 91 S. Ct. 1410, 28 *L. Ed. 2d* 813 (1971); see *United States v. Thirty-seven Photographs,* 402 *U. S.* 363, 91 S. Ct. 1400, 28 *L. Ed. 2d* 822 (1971). In *Reidel* the defendant was convicted under a federal statute for using the mails to distribute obscene material to an adult who had responded to a newspaper advertisement. The Court said in upholding the conviction: *". . . [Stanley]* does not require that we fashion or recognize a constitutional right in people like Reidel to distribute or sell obscene material." *Id.,* 402 *U. S.* at 356, 91 S. Ct. at 1412, 28 *L. Ed. 2d* at 817. Nor can we recognize a constitutional right in anyone to do business in obscenity. See Comment, "Still More Ado About Dirty Books (and Pictures): *Stanley, Reidel* and *Thirty-seven Photographs,"* 81 *Yale L. J.* 309, 327–332 (1971). We cannot draw a distinction, as does defendant, between a sale to those in the position of Watson and a sale to the general public. Nor can we say such a distinction is significant. In *Gable v. Jenkins, supra,* 397 *U. S.* 592, 90 *S. Ct.* 1351, 25 *L. Ed. 2d* 595, the Supreme Court affirmed without explanation a three-judge District Court decision upholding a revised Georgia obscenity statute which prohibited the dissemination of obscene material "to any person." 309 *F. Supp.* 998.

The judgment of the Appellate Division is reversed and the case is remanded for a new trial.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.