169 N.J. Super. 370 (1979)
404 A.2d 1227
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH CARMEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1979.
Decided July 3, 1979.
*372 Before Judges MATTHEWS, KOLE and MILMED.
Mr. Gary D. Gordon argued the cause for appellant (Mr. Gary D. Gordon, Associate Staff Counsel, American Civil Liberities Union, and Mr. Richard H. Insley, attorneys).
Mr. Ihor Rakowsky, Assistant Prosecutor, argued the cause for respondent (Mr. Roger W. Breslin, Jr., Bergen County Prosecutor, attorney; Mr. H. Carleton Clinch, Assistant Bergen County Prosecutor, on the brief).
PER CURIAM.
Defendant Joseph Carmel appeals from an interlocutory order denying his motion to suppress material taken from his store.
Defendant was arrested in his stationery and bookstore on February 14, 1978. He was charged with violation of N.J.S.A. 2A:115-2 in that he did "utter, or possess with intent to utter or expose obscene and indecent books, magazines and films as defined by statute." He was also charged with violation of N.J.S.A. 2A:115-2.3 in that he did "knowingly, communicate publicly material obscene for public communication to wit: magazines of the title, Peace & Love, Female Masturbation, Toilet Teens, Hot Cheerleaders, contrary to the revised statutes." In addition, defendant was charged with violation of the local ordinance of Hillsdale in that he did "exhibit and offer to sell indecent or lewd books, magazines and films."
On May 11, 1978 defendant moved to suppress the materials taken from the store and for the return of the seized property. On June 12, 1978 the motion to suppress was denied. Defendant chose to withdraw the motion for return of property when he was granted the option of proceeding with the plenary hearing or withdrawing the motion.
*373 On August 11, 1978 a Bergen County Grand Jury returned indictments against defendant and one Anthony Acrury for violation of N.J.S.A. 2A:115-2 and 2A:115-2.3 and, N.J.S.A. 2A:130-2 and 2A:130-3.
Defendant owns and operates a stationery and bookstore at 106 Broadway Avenue, Hillsdale, Bergen County. On February 14, 1978 a search warrant was issued by the judge of the Hillsdale Municipal Court authorizing a search of:
* * * a stationery store facing Broadway in Hillsdale with a sales room and storage area.
The store is part of the Marsala Building and is a wood frame building.
and to seize
* * * material obscene for public communication, material in violation of Boro Ord. 13-2 which are lewd and indecent books. Specific magazines Peace & Love, Female Masturbation, Toilet Teens, Hot Cheerleaders, and other numerous magazines depicting and describing natural and unnatural sex acts.
In executing the warrant on that date the police searched three storage areas of the premises and seized the items specified, as well as numerous films, magazines and books determined by them to be within the warrant, and papers and ledger books. Approximately 1,040 items were seized and subsequently inventoried.
Defendant was arrested at the store. Anthony Acrury, proprietor of the Sunrise Booksale Company, was also in the store and was arrested at the same time. A box of materials, including various magazines, was found in his possession and was also seized.
Defendant urges three issues on appeal: (1) the seizure and retention of his stock, absent a prior adversary hearing, constitutes an unlawful prior restraint in violation of the First Amendment; (2) the seizure of his stock without a prior hearing violated his right to procedural due process under the Fourteenth Amendment, and (3) the search warrant *374 was defective on its face and as applied in violation of his Fourth Amendment rights.
We agree that the warrant was constitutionally defective. Although not raised directly by defendant, we have difficulty initially with the affidavit in support of the search warrant. In Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), a police officer visited defendant's place of business and learned that he distributed particular magazines which the officer had listed. The officer subsequently purchased one magazine at each of five newsstands. Shortly thereafter he filed six complaints stating that defendants, at stated places of business, kept for the purpose of sale obscene publications. Although none of the magazines was shown to the judge, six search warrants nevertheless issued, authorizing seizure of obscene materials. Approximately 11,000 copies of 280 publications were ultimately seized. Aside from the issue of a prior hearing, the court pointed out that the warrants issued on the strength of the conclusory assertions of a single police officer without any scrutiny by the judge of the materials considered to be obscene, and thus were unconstitutional.
The court in Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), relied on Marcus in holding invalid a warrant issued on the basis of an affidavit of a police officer which stated the titles of the motion pictures and that the officer had determined from personal observation of them and of the billboard in front of the theatre that the films were obscene.
There the police officer's affidavit listed the titles of 17 magazines and then stated that "observation of these magazines and titles included numerous females with exposed breasts, fondling of their breasts on the covers or fondling of other persons (on the same cover) of genital and breast areas." The affidavit contains further general descriptions of this nature without relating such descriptions to particular books or magazines. Although the present affidavit is somewhat more detailed than those in Marcus and Lee Art Theatre, a *375 factual basis is still lacking. We cannot agree with the trial judge's conclusion that the magazines "are by their very titles sufficient to give the magistrate an indication of the potential obscene material."
Even if the affidavit before us provided a sufficient basis for the warrant, the warrant itself is subject to question for vagueness and overbreadth. It authorized the seizure of obscene material, lewd and indecent books, four specific magazines, and other magazines depicting and describing natural and unnatural sex acts.
It is well settled that the Fourth Amendment requires that warrants describe the items to be seized with particularity State v. Muldowney, 60 N.J. 594, 600 (1972). In Muldowney the court found the warrant deficient in that it directed the police officer to seize any material found by him to be in violation of N.J.S.A. 2A:115-2 and thus delegated to him the function of deciding whether the materials were obscene.
Here the terms "obscene" and "lewd and indecent" were not sufficiently definite so that the officer excuting the warrant could identify the property sought with reasonable certainty. The State argues that the term "depicting or describing natural or unnatural sex acts" provided adequate guidelines. Indeed, with respect to that phrase, the judge below found that "any adult understands what a sex act is and can draw a distinction between what is natural or unnatural." In holding the warrant invalid in Muldowney, the court indicated that the warrant could have directed the seizure of films depicting natural and unnatural sex acts. 60 N.J. at 600-601. Here we have little doubt that the phrase was capable of being understood. However, the term is overbroad in its potential for authorizing seizure of constitutionally protected publications. We find Muldowney to be distinguishable. There, the facts related to seizure of films rather than books and magazines. While a film depicting a natural or unnatural sex act might be a sufficiently definite *376 description, the same is not true of a book or magazine describing such an act. Certainly, many books describing acts of this sort are constitutionally protected. The danger inherent in the broad language of this warrant is inescapable.
We also find that the warrant was invalid as applied. The officers seized virtually all of defendant's stock. A glance at the inventory indicates that numerous copies of the same books and magazines were taken. Various films were seized, and nothing in the record suggests that they were viewed by the officers to determine if they depicted natural or unnatural sex acts. Also seized were various pipes, screens, etc., and a note pad with receipts. The latter were clearly not within the scope of the warrant. Defendant was effectively put out of business.
In Marcus, above, 367 U.S. at 732, 81 S.Ct. 1708, the court condemned a broad seizure as a violation of the Fourteenth Amendment, noting that the number of publications seized and the time spent in executing the warrants indicated that each decision was made with little opportunity for reflection and deliberation. Marcus was followed in State v. Hudson Cty. News Co., 41 N.J. 247 (1963), where the police obtained a warrant to search defendants' warehouse "for books of obscene nature." They confiscated 100 copies each of seven magazines  all the copies defendants had. It was held that such procedures were not distinguishable from those found constitutionally defective in Marcus and thus constituted an unconstitutional prior restraint on defendants' rights under the First and Fourteenth Amendments.
The items taken from defendants' place of business may not be admitted as evidence against him in the trial of the indictments mentioned because they were seized pursuant to a constitutionally defective warrant. The materials, not being per se contraband, although in our view they are patently obscene, must be returned to defendant. State v. Muldowney, above, 60 N.J. at 602.
*377 In view of our disposition of the cause, as expressed in the foregoing, we deem it unnecessary to pass on the other questions raised by defendant.
Reversed.