STATE OF CONNECTICUT *v.* RAUL SANTIAGO
(4564)

STATE OF CONNECTICUT *v.* BENJAMIN
CAMPFIELD ET AL.
(4565)

STATE OF CONNECTICUT *v.* OLLIE LAWRENCE ET AL.
(4566)

BORDEN, DALY and BIELUCH, Js.

Argued March 19—decision released July 29, 1986

*Carl Schuman,* assistant state's attorney, with whom, on the briefs, were *Katherine J. Lambert* and *James L. Radda,* former deputy assistant state's attorneys, for the appellant (state).

*James Kearns,* with whom were *David Goldman* and, on the briefs, *Earl I. Williams,* for the appellees (named defendant in each case).

BORDEN, J. In these combined cases, the state appeals,[1] with the permission of the trial court, from the judgments of the court dismissing with prejudice the informations against the defendants following the suppression of evidence by the trial court. The informations charged the defendants with professional gambling in violation of General Statutes § 53-278b. The

---

[1] These appeals were transferred to this court by the Supreme Court. General Statutes § 51-199 (c).

filing of the informations resulted from two searches in New Haven made pursuant to search and seizure warrants. The issues involve (1) whether the defendants established reasonable expectations of privacy in the areas searched so as to enable them to challenge the introduction of the evidence gathered by the searches, and (2) whether the facially general warrants were made sufficiently particular by reference to the applications and affidavits which accompanied them. We find error and remand for further proceedings.

There are three separate appeals. Two of the appeals, those involving the defendants Campfield and Santiago, arise out of a search pursuant to a warrant on April 1, 1982, of premises at 844 Grand Avenue, in New Haven, known as The 844 Grand Avenue Recreation Center.[2] The third appeal, involving the defendant Lawrence, arises out of a search pursuant to a warrant on April 3, 1982, at 444 Legion Avenue, in New Haven, known as the Chicken Plus Luncheonette.[3]

The Grand Avenue cases arose as follows: On March 31, 1982, a search and seizure warrant was

[2] These two appeals were also combined by the trial court with the appeals in the cases of the following defendants whose companion cases were prosecuted, by stipulation of the parties, with the cases of Campfield and Santiago: Wilbur House, Angel Ortiz, Robert Woods, Rocell Wilson, Allen Jeffries, Anthony Poppagoda, Henry Hannible, Joseph Williams, Ollie Lawrence, Viola Pugh, Eddie Parks, Milvin Long, Donald Fleming, Willie Grinnan, Cleveland Ellison, Miguel Pitman, and Pasquale Russo.

[3] This appeal was also combined by the trial court with the appeals in the cases of the following defendants whose companion cases were prosecuted, by stipulation of the parties, with the case of Lawrence: Anthony Poppagoda, Pasquale Russo, Michael LaRocco, Willie Highsmith, John Lewis, Cleveland Ellison, Raymond Knox, Claude Ellison, John Green, Paul Acklin, Victor Mase, J.T. Williams, and Charles Tyson.

It appears from this record that Santiago was also arrested at the Legion Avenue premises and charged together with these defendants. Thus his separate appeal relates to both the Grand Avenue and the Legion Avenue searches. It also appears that the following defendants, whose names appear in the Grand Avenue appeal, are also involved in the Legion Avenue appeal: Anthony Poppagoda, Pasquale Russo, and Cleveland Ellison.

issued by a Superior Court judge based on an affidavit establishing probable cause to believe that The 844 Recreation Center was being used as an after hours club and was disposing of liquor without a permit in violation of General Statutes § 30-77. The warrant was signed by the judge, but those parts of the printed warrant form describing the place and person to be searched and the property to be seized were left blank.

The parts of the form describing the place and person to be searched consisted of two boxes, which were not checked, followed by certain recitals and a blank space to be filled. The first box was followed by the following language: "enter into or upon and search the place or thing described in the foregoing Affidavit and Application, to wit. . . . " The second box was followed by the following language: "search the person described in the foregoing Affidavit and Application, to wit . . . . "[4] The part of the form describing the property to be searched for was as follows: "for the property described in the foregoing Affidavit and Application, to wit . . . . " None of the boxes was checked, nor were the blanks filled in.

On April 1, 1982, the New Haven police department executed the warrant. The lengthy return and inventory indicated that the police "searched the person, place, or thing named [in the warrant], to wit: 844 Grand Avenue—Grand Avenue Recreation Center located on the (1st) First Floor and Basement of 844 Grand Ave. and found thereon or therein, seized and

---

[4] Although this language appears on the warrant form, it is clear from the return and inventory that the police regarded the warrant as authorizing only the search of the premises and the seizure of certain property therein, and not as authorizing the search of any particular person. Nor does the state on appeal attempt to justify the warrant as authorizing the search of any individual. We therefore treat this case as involving a search and seizure warrant aimed at premises and property therein, and not as directed at a person.

now hold in custody the following [list of items]."[5] The defendants involved in the Grand Avenue cases were arrested at the time of the execution of the search warrant.

The Legion Avenue cases arose as follows: On April 3, 1982, a search and seizure warrant was issued by a Superior Court judge based on an affidavit establishing probable cause to believe that the crime of keeping liquor with intent to sell, in violation of General Statutes § 30-77, was being committed at 444 Legion Avenue, in New Haven. The affidavit and application described the premises as "the first floor store front with silver metal facade with large glass windows covered with black curtain type material, and a sign with the lettering above the windows stating Chicken Plus Luncheonette." The warrant was signed by the judge, but the same boxes were unchecked and the same blanks not filled in as was the case with respect to the Grand Avenue warrant. The New Haven police department executed the warrant on the same day. The return and inventory indicated only that they had searched "444 Legion Ave. Silver Metal facade, Store Front, Large Windows, with sign above windows stating Chicken Plus Luncheonette," and that the property seized was "[a]ll pertinent property pertaining to

___

[5] The items seized were as follows: two portable television sets; two cigarette machines; two soda machines; two juke boxes; three refrigerators; two video game machines; a pinball machine; a room fan; four doors; a door buzzer; assorted bar stools and other chairs and tables; a box of records; a pool table; a foam rubber cushion for backing on a crap table; a bar; various stereo equipment and other electrical appliances; a card table for eight players; two kitchen type tables; three coin operated pool tables; a table mounted on saw horses and used as a crap table; a door closer; a cash register; various items of food and drink, both alcoholic and nonalcoholic; bar supplies; fifteen pool cue sticks with a rack; $23.75 in quarters which fell from pool tables while they were being removed; nine dice; thirty-eight boxes of dice; a box of playing cards; eight playing cards with numbers written on the backs; a cigar box containing $28.75; and "$9,049.06 seized from Crap Table & Various Persons Arrested on Gambling Charges."

said Search Warrant." The defendants involved in the Legion Avenue cases were arrested at the time of the execution of the search warrant.

All the defendants, in both the Grand Avenue and Legion Avenue cases, moved to suppress all the evidence seized and moved for its return, claiming that the warrants were invalid on the common ground of lack of particularity.[6] The defendants in all cases did not question the probable cause established by the underlying affidavits, relied solely on the facial invalidity of the warrants themselves, and presented no evidence. The state claimed that (1) none of the defendants had established a reasonable expectation of privacy in the area searched; (2) the lack of particularity in the warrants was cured by the incorporation by reference of the underlying affidavits; and (3) even if the warrants were invalid, the seizures were independently justified because the police officers executing the warrants had been invited into public places. The state offered to introduce evidence to support this last claim, which evidence the trial court rejected as irrelevant.

The trial court ruled that the warrants were facially invalid for lack of particularity, and suppressed all the evidence seized and ordered it returned. Upon the state's concession that it could not prosecute without the suppressed evidence, the court dismissed all the informations with prejudice. These appeals followed.

---

[6] The state argues on appeal, for the first time, that none of the Legion Avenue defendants actually filed a motion to suppress, either orally or in writing, and that its appeal in those cases should be sustained on that basis alone. As the defendants correctly point out, however, it is clear from the trial court record that all parties, including the state, presented both sets of cases to the trial court on the assumption that motions to suppress had been filed. Since this was the assumption on which the cases were tried and decided, we will review them on the same assumption. See *State* v. *McKnight,* 191 Conn. 564, 578–79 n. 14, 469 A.2d 397 (1983).

I

We first consider the cases involving all the defendants except Campfield. The state argues that the court erred in granting the defendants' motions to suppress, and thus in dismissing their cases, because they did not establish the requisite reasonable expectations of privacy. We agree.

The law is clear that, in order for a defendant to challenge the introduction of evidence resulting from a search and seizure, he must at the threshold establish a reasonable expectation of privacy in the area searched. "A person may not object to the introduction of evidence resulting from an illegal search unless he first proves that he was a victim of that search. *Rawlings* v. *Kentucky,* 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980). One is a victim of a search when it violates his reasonable expectation of privacy in the area searched. *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed.2d 387, reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1978). Therefore, the first question that must be answered in any suppression case is whether the individual who seeks suppression had a reasonable expectation of privacy in the area searched." *State* v. *Daay,* 5 Conn. App. 496, 498, 500 A.2d 248 (1985). "Absent such an expectation, the subsequent police action has no constitutional ramifications." *State* v. *Brown,* 198 Conn. 348, 355, 503 A.2d 566 (1986). The defendant "has the burden of proving that he had a reasonable expectation of privacy in the area searched." *State* v. *Daay,* supra, 499. It is not sufficient for this purpose that a defendant seeking to challenge a search was legitimately on the premises searched. *Rakas* v. *Illinois,* supra, 142–48.

These defendants made absolutely no effort to establish their reasonable expectations of privacy in either the Legion Avenue or Grand Avenue premises. There is nothing in these records, either in the trial court or in this court, which would permit them to challenge either search. There is nothing in these records to establish the connection of any of these defendants with the premises searched which would establish his reasonable expectation of privacy in those premises. They utterly failed to lay any foundation for this basic threshold requirement for such a challenge.

The defendants argue in their brief that their reasonable expectations of privacy derive solely from "the fact that all defendants had their persons searched and that a substantial sum of money was seized from 'various persons arrested. . . . ' " See footnote 5, supra. There is nothing in this record, however, to support their factual claim that all the defendants were searched, because the defendants made no effort to individualize their claims in the trial court. The return and inventory does not indicate that all defendants were searched. They presented no evidence as to how either warrant was executed. They presented no evidence that all the defendants were searched and they made no effort to establish what property or money was seized from whom. While it may be true that some or all defendants were searched and that some money or other evidence was seized from some or all of them, each defendant had the burden to establish that he was searched in order to establish his individual reasonable expectation of privacy. The fact that a total sum of money was seized from "Various Persons Arrested"; see footnote 5, supra; is insufficient to give every defendant arrested a reasonable expectation of privacy sufficient to challenge all the evidence seized. Under these circumstances, their blanket claim, while it purported to cover all of them, in fact covered none.

## II

This leaves for consideration Campfield's challenge to the search of the Grand Avenue premises and the seizure of the evidence therefrom. We conclude that he established a sufficient expectation of privacy in the premises. We also conclude that the warrant, when read together with the application and affidavit which was attached to it, was valid. Analysis of the state's appeal as to Campfield requires further elaboration of the application and affidavit, and of the search and seizure warrant, which were before the trial court.

The combined application and affidavit for the search and seizure warrant stated, inter alia, as follows: "The undersigned . . . has probable cause to believe that certain property, to wit: bar, beer, alcoholic liquor, monies, mixes, stereo equipment, pool tables, signs, disco lights, glasses, tables, chairs, and dice is possessed, controlled, designed or intended for use as a means of committing the crime of unauthorized sale of alcoholic liquor. And is within or upon a certain person, place or thing, to wit . . . The 844 Grand Ave. Recreation Center located on the first floor and basement of 844 Grand Ave. which is a three (3) story brick structure with the first and second story having wood facing." The underlying facts establishing probable cause were as follows: Between midnight and 8:00 a.m. at various times between December 21, 1981, and January 17, 1982, a New Haven police officer saw several men and women enter and exit the premises. On February 27, 1982, a New Haven police officer entered the premises to check the recreation club's permit. He observed three pool tables on the first floor and, in the basement, a bar fully stocked with beer and assorted alcoholic liquors, with a sign behind the bar indicating the prices of drinks. There were several persons at tables drinking alcoholic beverages. A small room off

the basement contained a dice table. There was a dance floor, sound equipment and disco lights. The affidavit also stated that the premises had a three door front entrance; the two inner doors were operated by a buzzer activated by a doorman. When the police officer entered the premises, the doorman activated a switch which turned off the basement lights, warning the people inside that the police were present. The affidavit stated that Campfield was the permittee for the recreation center. Other facts stated in the affidavit were that separate surveillances of the premises between midnight and 6:00 a.m. on March 25, March 26, and March 28, 1982, disclosed many persons entering the premises and thereafter leaving the premises in intoxicated states. The affidavit concluded with the request "that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property."

The search and seizure warrant contained the following language: "The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the undersigned, a Judge of the Superior Court . . . . From said Affidavit, the undersigned finds that there is probable cause . . . to believe that the property described in the foregoing Affidavit and Application is within or upon the person, if any, named or described in the foregoing Affidavit and Application, or the place or thing, if any, described in the foregoing Affidavit and Application, under the conditions and circumstances set forth in the foregoing Affidavit and Application, and that, therefore, a Search and Seizure Warrant should issue for said property." The warrant then commanded any police officer "to enter into or upon and search the place or thing described in the foregoing Affidavit and Application, to wit: . . . for the property described in the

foregoing Affidavit and Application, to wit: . . . and upon finding said property to seize the same, take and keep it in custody until the further order of the court. . . . '' As noted above, the preprinted box before the words, "enter into or upon and search the place," and the space following the phrase, "to wit," was left blank.

The state concedes on appeal that analysis of Campfield's claim of an expectation of privacy differs from that of the other defendants. The state argues, nonetheless, that he did not sufficiently establish a reasonable expectation of privacy to challenge the search. We disagree. We conclude that his status as permittee gave him a sufficient reasonable expectation of privacy in the premises to challenge the search of those premises.

Whether a person has a reasonable expectation of privacy in an area involves a two part inquiry: (1) whether the individual has exhibited a subjective expectation of privacy; and (2) whether that expectation is one that society is prepared to recognize. *State* v. *Daay,* supra, 498. The description in the affidavit of the precautions taken at the front entrance to the recreation center are certainly sufficient to manifest a subjective expectation of privacy.[7]

Although it is not clear from this record, we deduce that Campfield was the permittee of the recreation center under a permit to conduct a public billiard and pool room pursuant to General Statutes § 53-280.[8] Such a

---

[7] For purposes of this analysis we have disregarded the state's offer of proof made in the trial court, and rejected by it as irrelevant, that despite those precautions the police officers were admitted, both at the initial entry preceding the warrant and at the execution of the warrant itself, without inquiry or objection by the doorman. We do so, not because such a factual showing may not be pertinent, but because it is not necessary to consider it due to our disposition of Campfield's claim.

[8] General Statutes § 53-280 provides: "BILLIARD AND POOL ROOMS; PERMITS. The first selectman of any town, the chief of police of any city or

permit requires the permittee to be responsible for the control of the premises so that they are not used in violation of the restrictions provided in General Statutes §§ 53-280 and 53-281. Those restrictions prohibit gaming, and also regulate the areas in which food may be sold, the hours of operation and the age of the patrons. Violations of these restrictions subject the permittee to revocation or nonrenewal of his permit and to criminal penalties. Id.

Implied in this liability of the permittee for violations of the permit restrictions is the right of the permittee to exclude persons from the premises. "One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, Ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of his right to exclude." *Rakas* v. *Illinois,* supra, 144 n.12; see also *State* v. *Brown,* supra, 357 (reasonable expectation of privacy may derive from right to control access and exclude others).

We reject the state's argument that, because the center was a public place, Campfield had no reasonable

---

the warden of any borough may grant permits to suitable persons to conduct public billiard and pool rooms in such town, city or borough, as the case may be, and may revoke any permit issued by him, for cause found after hearing. The use of any billiard or pool table for the purpose of gaming within any billiard or pool room, for the conduct of which a permit has been granted, or the carrying on within such billiard or pool room of any game of chance shall be sufficient cause for the revocation of such permit or for the refusal of a renewal of such permit. Each application for such a permit shall be in writing and shall describe the place where such billiard or pool room is to be located and state the number of tables to be used therein and the name of the proprietor thereof. Each such permit shall designate the place where such business is to be carried on and shall continue in force for one year unless revoked. Each person receiving such permit shall annually pay to the authority granting the same the sum of ten dollars for the use of the municipality. Any person who conducts, maintains or keeps open a public billiard or pool room without such permit shall be fined not more than fifty dollars or imprisoned not more than six months or both."

expectation of privacy in it. It is true that General Statutes § 53-280 provides for the grant of a permit "to conduct [a] public billiard and pool [room]," and that General Statutes § 53-281 provides that "[a]ny . . . police officer may at any time enter a public billiard or pool room for the purpose of ascertaining if the law is being violated therein. . . . " It is also true that, as such a public place subject to such entry, the level of expectation of privacy which society is prepared to recognize is quite low in the privacy hierarchy.

We do not believe, however, that these factors alone eliminated in this case an otherwise reasonable expectation of privacy on the part of Campfield, the person in control, where the police conduct in question was not objectively like that of a public patron engaging in the normal transaction of the business of the premises. "[T]here is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees." *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 329, 99 S. Ct. 2319, 60 L. Ed.2d 920 (1979) (town justice viewing and examining books in manner different from that of ordinary patron); cf. *Maryland* v. *Macon,* 472 U.S. 463, 469, 105 S. Ct. 2778, 2782, 86 L. Ed.2d 370 (1985) (where undercover officer purchased obscene magazines in normal manner, the defendant "did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business"). In this case, the police entered for the purpose of executing the search and seizure warrant with which they were armed and, from a perusal of the return and inventory, they executed it sweepingly. Under these circumstances, they can hardly be viewed as akin to public patrons.[9] Furthermore, we cannot find, either

[9] We do not decide that Campfield's reasonable expectation of privacy as the permittee of the premises automatically entitled him to challenge

in the trial court record or in the state's brief on appeal, any reliance on that part of General Statutes § 53-281 which grants a right of entry to the police at any time to ascertain if the law is being violated. We, therefore, need not decide what effect that statutory provision may have on the question of Campfield's reasonable expectation of privacy. His right to challenge the search of the recreation center has been established.

the seizure of all the evidence gathered. We emphasize that this was a search of premises in which numerous persons were found and arrested, and that many items were seized, some incriminating and many benign. See footnote 5, supra. We also emphasize that the return and inventory did not identify what was seized from whom or from where; and that even in the face of the state's response that the defendants had to establish their reasonable expectations of privacy, Campfield, together with all of the other defendants, made no effort, other than to note his status as permittee, to identify what items he claimed were within his protected expectation of privacy.

"The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places." *Ybarra* v. *Illinois,* 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed.2d 238 (1979), reh. denied, 444 U.S. 1049, 100 S. Ct. 741, 62 L. Ed. 2d 737 (1980). In *Ybarra,* the Supreme Court decided that a search warrant authorizing the search of a bar and of its bartender did not authorize the search of the patrons of the bar. In discussing the separate and individual expectations of privacy of the bartender and the patrons, the court stated: "Each patron who walked into the [bar] was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. *That individual protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern* . . . ." (Emphasis added.) Id., 91–92. Similarly, in this case what may have been taken from the persons of various patrons of the recreation center, or from areas then under their immediate control, were not necessarily at that time within the individual reasonable expectation of privacy of Campfield as the permittee. Because Campfield limited his challenge to the facial invalidity of the warrant, because he made no attempt to individualize his claim, and because we conclude that the warrant was not invalid, we need not decide the precise contours of his protected privacy expectation. Nor, for the same reasons, will it be necessary for the trial court to do so on the remand. To permit him now to challenge the search anew on bases other than those originally raised in the trial court would be to encourage a piecemeal challenge to the same search and seizure, a procedure which our practice does not countenance.

We turn, therefore, to the state's principal claim of error. That claim is that the facial lack of particularity of the search and seizure warrant was cured by reference to the application and affidavit which was attached to the warrant and which specifically was incorporated into the warrant. We agree.

The particularity clause of the fourth amendment requires that no warrants issue except those "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. This standard is met with respect to the place to be searched " 'if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' *Steele* v. *United States No. 1,* 267 U.S. 498, 503, 45 S. Ct. 414, 69 L. Ed. 757 (1925); *United States* v. *Alexander,* 761 F.2d 1294, 1300 (9th Cir. 1985)." *State* v. *Abbott,* 5 Conn. App. 441, 446–47, 499 A.2d 437 (1985). With respect to the things to be seized, the standard is met if " 'the officer executing it can identify the property sought with reasonable certainty.' " 1 LaFave & Israel, Criminal Procedure § 3-4 (f), quoting *State* v. *Muldowney,* 60 N.J. 594, 600, 292 A.2d 26 (1972).

There are three purposes behind the particularity clause: (1) to prevent general searches; (2) to prevent the seizure of objects in the mistaken belief that they are within the scope of the issuing magistrate's authorization; and (3) to prevent the issuance of warrants on vague or doubtful factual bases. LaFave & Israel, supra. Reading the particularity clause in the light of these three purposes has led the courts to recognize a well established exception to the general rule that the warrant itself must describe with sufficient particularity the place to be searched and the property to be seized. "In determining whether the description given the executing officer was sufficiently detailed, it is of course important initially to examine the descrip-

tion which appears in the warrant itself. If that description is inadequate, however, it is appropriate to look to the description appearing in the warrant application or affidavit *if* it is clear that the executing officers were in a position to be aided by these documents, as where they were attached to the warrant at the time of execution and incorporated therein by reference." (Emphasis in original; footnote omitted.) 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.5, pp. 73–74; see *United States* v. *Johnson,* 690 F.2d 60, 64 (3d Cir. 1982), cert. denied, 459 U.S. 1214, 103 S. Ct. 1212, 75 L. Ed. 2d 450 (1983); *United States* v. *Wuagneux,* 683 F.2d 1343, 1350–51 (11th Cir. 1982); *United States* v. *Brock,* 667 F.2d 1311, 1323 (9th Cir. 1982); see also *State* v. *Rose,* 168 Conn. 623, 645–46, 362 A.2d 813 (1975) (*Cotter, J.,* dissenting on other grounds). Indeed, Campfield concedes the validity of this principle in his brief, but argues that it does not apply because the warrant in this case does not refer to the affidavit. We conclude that this principle applies in this case.

The parties stipulated in the trial court that the application and affidavit were attached to the warrant when it was executed. The application and affidavit described with reasonable particularity both the place to be searched and the property sought to be seized. The place was identified as The 844 Grand Avenue Recreation Center located on the first floor and basement of 844 Grand Avenue, described as a three story brick structure and second story with a wood facing. The property sought to be seized was described as a bar, beer and other alcoholic beverages, mixes, money, stereo equipment, pool tables, signs, disco lights, glasses, tables, chairs and dice. The factual statement establishing probable cause in the affidavit further elucidated the general locations of these items within the premises. The application and affidavit, at its conclusion,

requested authority "to enter into or upon said place
. . . . search the same, and take into custody all such
property."

The search and seizure warrant clearly incorporated
the critical parts of the application and affidavit by
reference. The warrant began by referring to "[t]he
foregoing Affidavit and Application for Search and Sei-
zure Warrant. . . . " It then referred to "the prop-
erty described in the foregoing Affidavit and
Application . . . within . . . the place . . .
described in the foregoing Affidavit and Application,
under the conditions and circumstances set forth in the
foregoing Affidavit and Application, and that, there-
fore, a Search and Seizure Warrant should issue for
said property." It concluded by commanding an offi-
cer to "enter into or upon and search the place . . .
described in the foregoing Affidavit and Application
. . . for the property described in the foregoing Affi-
davit and Application . . . and upon finding said prop-
erty to seize the same . . . . "

We note, of course, that the list of items actually
seized; see footnote 5, supra; goes far beyond the prop-
erty described in the application and affidavit and incor-
porated by reference in the warrant. We note also,
however, that Campfield did not challenge the evidence
on this basis in the trial court or attempt in this court
to justify the trial court's judgment on that alternate
ground. See Practice Book § 3012 (a). Of course, a sei-
zure of property beyond the bounds of that which is
described in a search and seizure warrant may be valid
based on applicable exceptions to the warrant require-
ment, such as plain view or a search incident to a valid
arrest. Because Campfield did not in the trial court and
does not in this court seek to suppress any of the evi-
dence seized on this basis, we have no need to consider
such a claim, nor will the trial court on the remand.
See footnote 9, supra.

There is error in each case, the judgments granting the motions to suppress and return, and dismissing the informations are set aside, and the cases are remanded for further proceedings according to law.

In this opinion the other judges concurred.