### STATE OF CONNECTICUT *v.* KEVIN LUCAS
### (AC 19867)

Landau, Dranginis and Dupont, Js.

Argued January 18—officially released May 8, 2001

*Felix Esposito*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's

attorney, and *Eva Lenczewski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Kevin Lucas, appeals from the judgment of conviction, rendered following a jury trial, of conspiracy to possess a narcotic substance with intent to sell in violation of General Statutes §§ 53a-48 and 21a-277 (a), possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and possession of a narcotic substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress, (2) admitted evidence of prior uncharged misconduct, (3) permitted the prosecutor to comment on the defendant's failure to testify and (4) instructed the jury with respect to reasonable doubt. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's claims. Prior to 7 p.m. on November 24, 1997, officers from the Waterbury police department obtained two search and seizure warrants relevant to the facts at issue. One of the warrants pertained to apartment 2B at 415 Willow Street in Waterbury (Willow Street warrant),[1] and the other pertained to a first floor rear apartment at 112-114 Cooke Street in Waterbury and to the persons of the defendant and Yolanda Crespo (Cooke Street warrant).[2]

---

[1] The Willow Street warrant authorized the police to "enter into or upon and search the place or thing described in the foregoing affidavit and application, to wit: 415 Willow Street apartment 2B Waterbury, Connecticut. Said building is a three story, brown sided building. Said apartment is on the second floor with the door marked 2B."

[2] The Cooke Street warrant authorized the police to "enter into or upon and search the place or thing described in the foregoing affidavit and application, to wit: 112-114 Cooke Street first floor, left side, rear apartment Waterbury, Connecticut. Said building is a two story, grey sided structure with the numbers 112 and 114 on the front porch. Said apartment is on the first floor rear, left side, [having] a rear exterior entrance." The warrant also

At approximately 7 p.m. on November 24, 1997, the Waterbury police were conducting surveillance of the Willow Street apartment when they observed the defendant, Crespo and Michael Davis exit the apartment and leave in a Porsche motor vehicle. The police stopped the vehicle[3] and found seven glassine bags of "Death Row" heroin on the center console. Following a pat-down, an officer removed a set of keys from the defendant's person. The defendant, Crespo and Davis were arrested and driven to the Cooke Street apartment, where the police executed the Cooke Street warrant.

The officers forcibly entered the Cooke Street apartment when no one responded to their knock. No one was in the apartment, and the police seized no evidence. While these events were occurring, other officers went to the Willow Street apartment to execute the Willow Street warrant. They knocked on the door and were admitted by the tenant, Michelle Yorker. One of the officers tested the keys that he had seized from the defendant and found that one of them opened the lock to the apartment door. The police seized certain items, including a pouch bearing a Chucky Cheese logo that contained cocaine in both freebase and salt forms, a digital scale of the kind typically used by drug dealers and plastic sandwich bags similar to the ones containing the drugs seized from the Porsche.

Yorker and Crespo both testified at trial. Yorker had given the defendant a key to her apartment and permitted him, Crespo and Davis to package drugs there.[4] She

authorized the police to "[s]earch the person described in the foregoing affidavit and application, to wit: Kevin Lucas (DOB 06-08-60) a black male, 5 [feet] 08 [inches], 130 pounds. Yolanda Crespo (DOB 05-20-70), a Hispanic female, 5 [feet] 07 [inches], 196 pounds."

[3] The officers knew of the defendant and Crespo, and that they were using the Willow Street apartment to store and package narcotics. The officers also knew that the defendant drove a Porsche. See paragraphs two and three of the warrant affidavit at footnote 5.

[4] In return for using Yorker's apartment on Willow Street, the defendant was to provide Yorker with financial assistance.

also observed drug transactions, during which Crespo sold drugs supplied by the defendant. Crespo had an arrangement with the defendant whereby he would provide her with food, clothing and shelter in exchange for her selling the defendant's drugs. She used the Chucky Cheese pouch to carry the defendant's drugs. On November 24, 1997, the defendant, Crespo and Davis had been in the Willow Street apartment packaging narcotics. At the time they were stopped by the police, they were on their way to the Cooke Street apartment to sell the narcotics, which they did regularly at that location. Saint Margaret's School is within 1500 feet of the Willow Street apartment.

The defendant was arrested and charged with the crimes of conspiracy to possess a narcotic substance with intent to sell, possession of heroin with intent to sell, possession of heroin with intent to sell within 1500 feet of a school, possession of cocaine with intent to sell and possession of cocaine with intent to sell within 1500 feet of a school. The jury found the defendant guilty of the conspiracy and cocaine related charges. Following the jury's verdict, the court sentenced the defendant to eighteen years in prison. This appeal followed.

I

The defendant first claims that the court improperly denied his motion to suppress the evidence seized at the Willow Street apartment because the warrant was defective. We disagree.

The following facts pertain to this claim. Prior to trial, the defendant filed a motion to suppress the evidence found pursuant to the Willow Street warrant because paragraph seven of the affidavit in support of the warrant application stated that there was probable cause to search 112-114 Cooke Street, not the Willow

Street apartment.[5] The defendant claimed that the search violated both the fourth amendment to the United States constitution and article first, § 7, of the

[5] The affidavit for the Willow Street warrant provided in relevant part:

"1. That the affiants, Detective Dematteis and Officer Spagnolo are both regular members of the Waterbury police department having a combined total of [thirty-four] years experience. Further, that the affiants are presently assigned to the vice and intelligence division having conducted numerous narcotics investigations leading to arrests and convictions.

"2. That during the past five days of November 18, 1997, the affiants met with a known, reliable, and confidential informant who stated that Kevin Lucas and Yolanda Crespo are using 415 Willow Street apartment 2B Waterbury, Connecticut, which is on the second floor of the building marked with the numbers 2B on the door, to store narcotics, and using 112-114 Cooke Street first floor left side rear Waterbury, Connecticut, to sell narcotics. Further, that the informant stated that he has been inside both locations with Kevin Lucas during the past week and has seen Kevin Lucas as well as Yolanda Crespo in possession of narcotics in both buildings, and that Lucas and Crespo will not sell narcotics from 415 Willow Street, but only from 112-114 Cooke Street. Further, that the affiants know Kevin Lucas and Yolanda Crespo from previous narcotics investigations.

"3. That during the past five days of November 18, 1997, the affiants conducted a surveillance of both 415 Willow Street Waterbury, Connecticut, and 112-114 Cooke Street Waterbury, Connecticut. On numerous occasions, the affiants observed Kevin Lucas exit 415 Willow Street, Waterbury, Connecticut, enter a tan Porsche model 944 two door bearing New York marker N698JH, and drive to Cooke Street Waterbury, Connecticut, where Lucas was observed entering 112-114 Cooke Street first floor through a rear door.

"4. That during the past five days of November 18, 1997, the affiants met with the same informant who agreed to make a controlled buy of narcotics. That the informant was searched and no money or drugs were found. The informant was given police funds for the sole purpose of buying narcotics from Yolanda Crespo and Kevin Lucas. While under constant surveillance, the affiants observed the informant enter 112-114 Cooke Street first floor rear and exit a short time later. The informant then met with the affiants and handed to Officer Spagnolo a white rock substance. The information stated that the white rock substance was purchased from Yolanda Crespo while inside 112-114 Cooke Street and that Kevin Lucas was present in the apartment at the time the narcotics transaction took place.

"5. That the white rock substance was field tested by Officer Spagnolo and showed a positive reaction for cocaine.

"6. That based on the training and experience of the affiants, it is known that narcotics dealers keep their drugs, monies, records, receipts, notes, ledgers, and other documents relating to the distribution, ordering, and sales of narcotics in their homes or where they sell drugs from, and that narcotics

constitution of Connecticut. The court denied the motion to suppress, finding that the mistake in the affidavit was merely a scrivener's error, citing *State* v. *Santiago*, 8 Conn. App. 290, 513 A.2d 710 (1986).

"The standards for upholding a search warrant are well established. We uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . [T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories. . . . We are also reminded that [i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination." (Citations omitted; internal quotation marks omitted.) *State* v. *Rosario*, 238 Conn. 380, 385, 680 A.2d 237 (1996). The federal

dealers keep such items where they have ready access to them. In addition, it is known that narcotics dealers often keep weapons on their persons or nearby to protect their drugs and money.

"7. *That based on the above facts and information, the affiants believe that probable cause has been established to show that Kevin Lucas and Yolanda Crespo are using 112-114 Cooke Street first floor left side apartment rear Waterbury, Connecticut, for the illegal possession of narcotics with intent to sell ([General Statutes §] 21a-277 [a]), and the affiants respectfully request that a search and seizure warrant be issued for said apartment as well as the persons of Kevin Lucas and Yolanda Crespo.*" (Emphasis added.)

standard for challenging a warrant affidavit is the standard to be applied under article first, § 7, of our state constitution. *State* v. *Glenn*, 251 Conn. 567, 578, 740 A.2d 856 (1999).

Although we disagree with the trial court that *Santiago* is on point with the factual issues here,[6] that case accurately states the law controlling the validity of the warrants at issue here.[7] "The particularity clause of the fourth amendment requires that no warrants issue except those particularly describing the place to be searched, and the persons or things to be seized. U.S. Const., amend. IV. This standard is met with respect to the place to be searched if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 8 Conn. App. 304.

"There are three purposes behind the particularity clause: (1) to prevent general searches; (2) to prevent the seizure of objects in the mistaken belief that they are within the scope of the issuing magistrate's authori-

[6] The facts in *Santiago* are inapposite to the facts of this case. In *Santiago*, the defendant challenged the warrant for lack of particularity. The application and affidavit in support of the warrant, however, were quite specific as to the items to be seized. This court held that the police could refer to the application and affidavit that were attached to the warrant to clarify the items to be seized. *State* v. *Santiago*, supra, 8 Conn. App., 304–306.

Here, the Willow Street warrant is specific as to the place to be searched (apartment 2B at 415 Willow Street) and what is to be seized. The affidavit in support of the application and warrant, however, identifies drug activities at both 112-114 Cooke Street and 415 Willow Street, and the final paragraph of the affidavit, paragraph seven, attests in both instances that there is probable cause for a search and seizure warrant to issue for 112-114 Cooke Street and the persons of the defendant and Crespo. The issue is not the particularity of the warrant, but the accuracy of the affidavit in support of the warrant.

[7] "We can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

zation; and (3) to prevent the issuance of warrants on vague or doubtful factual bases." Id. "In determining whether the description given the executing officer was sufficiently detailed, it is of course important initially to examine the description which appears in the warrant itself." (Internal quotation marks omitted.) Id., 304–305. Here, the defendant does not question that the Willow Street warrant stated with particularity the place to be searched.

Before this court, the state argues that the error in the affidavit is merely a scrivener's error and that the court that issued the warrant would know that by comparing the applications and affidavits for the Cooke Street and Willow Street warrants. The defendant responded that this argument violates the rule that a magistrate may consider only the allegations within the four corners of the affidavit when issuing a warrant. See *State* v. *Diaz*, 226 Conn. 514, 543, 628 A.2d 567 (1993).

Although the affidavit for the Willow Street apartment contains a scrivener's error, the court properly denied the defendant's motion to suppress because the affidavit presented a substantial factual basis for the magistrate's conclusion that probable caused existed to issue the Willow Street warrant. A reliable confidential informant told police that the defendant participated in a conspiracy to sell narcotics whereby several individuals packaged the narcotics at the Willow Street apartment and sold them at the Cooke Street apartment. Both apartments were integral to their scheme.

Although the defendant is correct that a magistrate may not look to facts outside an affidavit to find probable cause, paragraph seven of the Willow Street affidavit is merely a summary of the attesting police officers' opinion as to the existence of probable cause. The magistrate, however, is charged with the responsibility of determining probable cause. While the magistrate

undoubtedly noticed the scrivener's error, the warrant applications and the warrants themselves were accurate as to the place and the persons to which they applied. This is not an instance where the magistrate relied on something other than the facts in the affidavits to find probable cause. The court, therefore, properly denied the motion to suppress.

## II

The defendant's second claim is that the court improperly admitted evidence of prior uncharged misconduct. Specifically, the defendant claims that the evidence of prior uncharged misconduct was more prejudicial than probative as to the existence of a relationship between the defendant and his coconspirators, and of his intent to sell narcotics. We are not persuaded.

The following additional facts are relevant to our resolution of this claim. The state's amended information charged the defendant with various narcotics violations "on or about the 24th day of November, 1997." Prior to trial, the state filed a notice of its intent to use uncharged misconduct as evidence during the trial. The state anticipated that Yorker would testify as to her arrangement with the defendant in which she allowed him to use her apartment for purposes associated with the sale of narcotics from approximately September to November, 1997, and as to her having witnessed drug transactions involving the defendant, among other things. The state anticipated that Crespo would testify about the defendant's regular travel to New York to obtain narcotics and his use of the Cooke Street apartment to sell narcotics, among other things. The defendant opposed the introduction of the uncharged misconduct by filing a motion in limine pursuant to Practice Book § 42-15.

After noting that the uncharged misconduct was prejudicial to the defendant, the court stated that it was

probative of the defendant's intent to commit the crime of conspiracy to possess narcotics and his intent to sell narcotics. The court concluded that the probative value of the evidence outweighed its prejudicial effect. The court ruled that the state could admit evidence of the arrangements that the defendant had with Crespo and Yorker to use their apartments as long as the conduct was ongoing and occurred at or near November, 1997. Crespo also would be permitted to testify as to the defendant's trips to New York, and Yorker would be permitted to testify about product testing. The court refused to permit any evidence of similar, prior arrangements that the defendant had with another woman. Crespo and Yorker testified in accordance with the court's ruling, including events that occurred at the end of October, 1997.

The defendant filed a request to charge regarding the evidence of prior uncharged misconduct, which the court incorporated in its supplemental charge. The court instructed the jury that it could use the evidence of events occurring before November 24, 1997, only with respect to count one, conspiracy to possess narcotics with intent to sell. The court told the jury that it could not use the evidence with respect to counts two through five, which charged possession with intent to sell. In addition, the court instructed the jury that it could consider the uncharged misconduct testimony of Crespo and Yorker with respect to their knowledge of the defendant's person, to their familiarity with him and in evaluating their credibility as to the crimes charged.

This court reviews evidentiary claims by an abuse of discretion standard. *State* v. *Hoth*, 50 Conn. App. 77, 87, 718 A.2d 28, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). "Relevant evidence of prior uncharged misconduct that is prejudicial in nature is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of

the purposes for which it is admissible, outweighs its prejudicial impact on the accused. . . . *State* v. *Ortiz*, 40 Conn. App. 374, 380, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . *State* v. *Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993). The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . *State* v. *Bush*, 249 Conn. 423, 430, 735 A.2d 778 (1999). . . . *State* v. *Copas*, [252 Conn. 318, 329–30, 746 A.2d 761 (2000)]." (Internal quotation marks omitted.) *State* v. *Legrande*, 60 Conn. App. 408, 415–16, 759 A.2d 1027 (2000), cert. denied, 255 Conn. 925, 767 A.2d 99 (2001).

Here, the court found that the proposed testimony of Crespo and Yorker would be prejudicial to the defendant, but concluded that its probative value as to the charge of conspiracy to sell narcotics outweighed its prejudicial value. "As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. . . . We have, however, recognized exceptions to the general rule if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 43 Conn. App. 830, 835–36, 687 A.2d 544 (1996). We, therefore, conclude that the court properly exercised its discretion by admitting evidence of the defendant's prior use of the Willow Street and Cook Street apartments to package and sell drugs, and the

testimony of Crespo and Yorker that they had witnessed or participated in narcotic sales at the defendant's request. The evidence was probative of a system of criminal activity related to the charge of conspiracy to possess narcotics with an intent to sell. Furthermore, the court gave the jury a limiting instruction as to the count and purposes for which the evidence could be considered. The jury is presumed to follow the trial court's instructions. *State* v. *Richardson*, 214 Conn. 752, 757, 574 A.2d 182 (1990). The court, therefore, properly admitted evidence of the defendant's prior uncharged misconduct.

## III

The defendant's third claim is that the court improperly permitted the prosecutor to comment on the defendant's failure to testify. We do not agree.

The following facts are relevant to this claim. Among other things, the state charged the defendant with possession of cocaine and heroin with intent to sell. The defendant, in his defense, attempted to convince the jury that the narcotics could have been for his personal use. To that end, the defendant presented testimony from Paul Goodfield, an expert in the field of drug and alcohol counseling. Goodfield provided opinion testimony as to the quantity of narcotics a drug-dependent individual would consume in a day. The defendant, however, presented no direct evidence that he was drug-dependent or that he had used cocaine or heroin. Defense counsel referred to Goodfield's testimony during his closing argument in an attempt to negate the element of intent to sell the narcotics.

In the state's rebuttal argument, the prosecutor responded to the defendant's personal consumption by means of a rhetorical argument as follows. "With regard to . . . Goodfield and the personal use of heroin and all that topic [that has] come up, I would submit that

. . . Goodfield may do very good work but, remember, he's a clinical evaluator. His information comes strictly from people who are looking to be categorized as addicts for whatever benefit they may receive from that. And it is the officers who are out there, who see what people have on them when they are stopped, who talk not only to addicts but to the people who sell to them. And they get a more balanced picture, I would submit, of what amounts are accurate and what amounts are used for personal use.

"And, remember, ladies and gentlemen, the court will tell you, you cannot speculate. You cannot create evidence which does not exist in this case. And I would submit that is exactly what [defense counsel] is asking you to do on the issue of personal use. There has not been one witness, and I don't believe there has been one iota of evidence in this case that would give you any foundation to believe that any of the people that you've heard from or heard of in this case used any drugs let alone heroin and cocaine. My recollection is that the only individual who gave you any indication of that at all was [Louise] Sears.[8] And that was in relation to himself. No one has told you that the defendant used drugs . . . . And for [defense counsel] to ask you to speculate, I believe is outside the realm of the evidence [that has] been presented."

Defense counsel immediately objected to the statement, stating, "Objection to the reference to my client; he has a right to silence in this case." The court responded: "You may proceed." During its charge to the jury, the court instructed the jury that the state had the burden of proving its case, that the defendant did not have to prove his innocence and that he had the constitutional right not to testify.[9] The defendant did not object to these portions of the charge.

---

[8] Sears was a resident of the Cooke Street apartment who testified at trial.

[9] With respect to the defendant's right to remain silent, the court instructed the jury more fully as follows: "[The defendant] did not testify in this case.

On appeal, the state argues that this claim is not reviewable because the defendant did not preserve it at trial. The defendant responds that the issue was preserved. We agree with the defendant. At trial, the defendant must object to the prosecutor's remarks, take an exception, ask for a mistrial or a curative instruction, or otherwise indicate to the court any displeasure with the prosecutor's argument. *State* v. *Negron*, 221 Conn. 315, 324, 603 A.2d 1138 (1992).

"In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent we have espoused the following criterion. A test for evaluating a prosecutor's argument that has been adopted by several courts and approved by the Court of Appeals of this circuit in *United States ex rel. Leak* v. *Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969), cert. denied sub nom. *Leak* v. *Follette*, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 [1970], seems adequate and proper[, that is]: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) *State* v. *Negron*, supra, 221 Conn. 325.

In his brief, the defendant has analyzed separately every clause and phrase of the prosecutor's comments to which he objects, rather than addressing the prosecutor's entire argument with respect to the defendant's personal use of drugs. When analyzing a claim of prosecutorial misconduct in the context of the conduct's depriving a defendant of the constitutional right to a fair trial, "[w]e do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire trial." (Inter-

As an accused person, he has the option to testify or not testify at trial. He is under no obligation to testify. He has a constitutional right not to testify. And you must draw no unfavorable inferences from the fact that he did not testify in this case."

nal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 356, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). That rule applies in the context here as well. "Also, the state may properly respond to inferences raised by the defendant's closing argument." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993).

The defendant argues that the prosecutor's comments fell into the category of asking for explanations that only the defendant can provide, which violates *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). On the basis of our review of the record, it is clear to us that several people who knew the defendant testified, including Crespo, with whom the defendant had an intimate relationship. Surely one of these individuals would have known of the defendant's personal drug use, and the defendant could have cross-examined them to support his defense theory. We construe the prosecutor's argument to call attention to the fact that the defendant did not ask any of those individuals about his personal use of drugs.

Furthermore, the argument squarely addressed defense counsel's closing argument that the quantity of narcotics seized on November 24, 1997, could conceivably have been for personal consumption, rather than for sale. Finally, lest there be any chance of prejudice to the defendant, the court instructed the jury that the defendant had a constitutional right not to testify and that the jury should not draw any adverse inference from his failure to testify. As previously noted, the jury is "presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Negron*, supra, 221 Conn. 331.

Finally, there was no prejudice to the defendant, as the jury acquitted him of the two counts of possession

of heroin, which leads us to conclude that the jury carefully considered all of the evidence. For these reasons, we conclude that the prosecutor did not improperly comment on the defendant's constitutional right not to testify.

## IV

The defendant's final claim is that the court improperly charged the jury that reasonable doubt is not a doubt suggested by the ingenuity of counsel or not justified by the evidence or lack of evidence. We do not agree.

Neither the defendant nor the state submitted a request to charge to the court on the concept of reasonable doubt. During the course of its instruction on reasonable doubt, the court stated: "A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts, nor is it a doubt suggested by the ingenuity of counsel, or even of any of the jurors, which is not justified by the evidence or lack of evidence." Following the instruction, defense counsel took a number of exceptions to the charge, including the instruction on the ingenuity of counsel,[10] noting that in *State* v. *Taylor*, 239 Conn. 481, 504, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997), our Supreme Court urged "trial courts to avoid its further use."[11] The court again addressed

---

[10] At no time did the defendant take an exception to the phrase "or lack of evidence."

[11] "[I]n *State* v. *Delvalle*, [250 Conn. 466, 470, 736 A.2d 125 (1999)], our Supreme Court rejected the claim that the use of ingenuity of counsel language was violative of a defendant's constitutional right to counsel and to a fair trial or that it was plain error. The *Delvalle* court reasoned that the Supreme Court has repeatedly upheld similar language on the ground that [it] did not, when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise misle[ad] the jury in any way. . . . *State* v. *Taylor*, [supra, 239 Conn. 504–505] . . . ." (Internal quotation marks omitted.) *State* v. *Taft*, 57 Conn. App. 19, 28, 746 A.2d 813 (2000). "Although the court in *Delvalle* rejected the constitutional challenge to the 'ingenuity of counsel' instruction, the court stated that '[t]o avoid any possibility of juror confusion arising

the jury and reinstructed it on the concept of reasonable doubt.[12] At the conclusion of the reinstruction, the court asked counsel to take exceptions, if any, to the supplemental charge. Defense counsel took no exception and, in fact, stated, "No, and thank you."

On appeal before this court, however, the defendant argues that the curative measure taken by the court was inadequate to ameliorate the prejudice caused by the impermissible ingenuity of counsel language because the court did not explicitly tell the jury to

from the use of the phrase, we invoke our supervisory authority over the administration of justice to direct our trial courts to refrain from using the ingenuity of counsel language in the future.' [*State* v. *Delvalle*, supra, 475–76]." *State* v. *Taft*, supra, 28. As was the instruction in *Taft*, the court's jury instruction in this case was given before the *Delvalle* court's direction about the future use of the "ingenuity of counsel" language. See *State* v. *Delvalle*, supra, 474; *State* v. *Young*, 56 Conn. App. 831, 843, 746 A.2d 795, cert. denied, 253 Conn. 904, 753 A.2d 939 (2000).

[12] The court further instructed the jury as follows: "[T]he state can sustain the burden resting on it only if the evidence before you establishes the existence of every element constituting the crime charged beyond a reasonable doubt. Beyond a reasonable doubt has no technical or unusual meaning. You can arrive at real meaning of it by emphasizing the word reasonable. Again, a reasonable doubt is a valid doubt. It's a doubt which has a valid reason, for which a valid reason can be assigned. It is a doubt which is something more than a guess or a surmise. It's not conjecture or fanciful doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising a doubt—raising doubts. A reasonable doubt is a doubt based on reason not on the mere possibility of innocence. It is a doubt on which you can in your own mind consciously give a reason. A reasonable doubt is an honest doubt. It's doubt which has its foundation in the evidence or lack of evidence and it's the kind of doubt which in the serious affairs that concern you in everyday life you would pay heed and attention to. There is, of course, no absolute certainty in the everyday affairs of life that is attainable. And the law does not require absolute certainty on the part of you, the jury, before you can return a verdict of guilty. The law does not require guilt beyond all doubt or even a mathematical or absolute certainty. What the law does require is that after hearing all the evidence, if you find that there is something in the evidence or lack of evidence which leaves in your mind as reasonable men and women a reasonable doubt about the guilt of the defendant, then the defendant must be given the benefit of that doubt and acquitted. If there is no doubt, then he must be found guilty."

disregard it. The state points out that the defendant did not bring this issue to the attention of the trial court when it could have taken a corrective action, if it chose to do so. The state claims that to permit the defendant to raise the issue on appeal is a form of trial by ambuscade of the court. See *State* v. *Baldwin*, 224 Conn. 347, 360, 618 A.2d 513 (1993). The state's position has merit. Our Supreme Court has long held that a "defendant may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." *State* v. *Cruz*, 56 Conn. App. 763, 772, 746 A.2d 196, cert. granted on other grounds, 253 Conn. 901, 753 A.2d 938 (2000); see *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987).

The defendant asks that, if we conclude that the claim was not properly preserved at trial, we review the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[13] The claim fails under the third prong of *Golding* because in *State* v. *Taylor*, supra, 239 Conn. 481, our Supreme Court concluded that the same ingenuity of counsel instruction, including the phrase "or lack of evidence," did not violate the defendant's constitutional right to a fair trial because the language taken in isolation did not reduce the state's burden of proof in violation of a state or federal constitutional right. Id., 504–505. The defendant concedes that his claim is not of constitutional magnitude. We, therefore, decline to address the claim further.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] In *Golding,* our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness

of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.