_____

No. 96-1227
_____

United States of America,    *
             *
    Appellee,     *
             * Appeal from the United States
  v.          * District Court for the
             * Northern District of Iowa.
Patricia Peters,      *
             *
    Appellant.    *


_____

Submitted: June 11, 1996

Filed: August 20, 1996
_____

Before MAGILL, Circuit Judge, HENLEY, Senior Circuit Judge, and
  DOTY,[*] District Judge.

_____

HENLEY, Senior Circuit Judge.

  Patricia Peters appeals her convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and making false declarations to a grand jury in violation of 18 U.S.C. § 1623(a). Peters contends that the district court[1] erred in admitting into evidence conversations found recorded on certain audio tapes seized from her home pursuant to a search warrant. The appellant argues that the audio tapes were beyond the scope of the search warrant and should have been suppressed. We affirm.

---

  *The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

  [1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

## BACKGROUND

In 1993 and early 1994, Iowa police officials investigated a cocaine distribution conspiracy in Clinton, Davenport and Cedar Rapids, Iowa, allegedly headed by one Wallace Jackson. Patricia Peters and several others were suspected of participating in the conspiracy. After Jackson was arrested in August 1993, the police were informed that the distribution of cocaine by Peters and others continued.

In October 1993, Peters was called to testify before a grand jury regarding the alleged drug distribution conspiracy. She testified that she had never seen Wallace Jackson with any drugs nor discussed any drug business with him. Peters testified a second time before the grand jury and again denied any knowledge of Wallace Jackson's involvement in the distribution of cocaine.

In December 1993, Moses Jackson, another member of the drug distribution conspiracy, was threatened at gunpoint for allegedly providing information about Wallace Jackson to the police and grand jury.

In January 1994, Clinton police executed two search warrants seeking evidence of the threat against Moses Jackson as well as evidence about the drug distribution conspiracy. One of these search warrants was for Peters' residence at 2525 Prospect in Clinton. The issuing state magistrate authorized the search and seizure of:

> any records or documents associated with cocaine distribution, to include records of sales, money collections, any ledger, notebooks, any documents relating to the case of US v. Wallace Jackson, to include grand jury testimonies, and a related ongoing investigation of drug trafficking in Clinton and Cedar Rapids, and reports of interviews.

Among the items seized from Ms. Peters' residence were three unmarked audio cassette tapes found in her bedroom. One of the cassettes was in a tape recorder and the other two were near the recorder. The agent who found the tapes said they were intermingled with notes and letters from Wallace Jackson who was incarcerated, but that the tapes were unmarked and there was no outward indication of their contents.

The agent listened to the tapes on the premises in order to decide whether to seize them.[2] The agent found that the tapes contained a recording of a telephone conversation which appeared to relate to the investigation of the drug conspiracy. In addition, the tapes contained a recording of another conversation in which Peters said "I don't care. I still lied." which the agent believed was connected to Peters' grand jury testimony.

The agent seized the tapes and portions of the recordings were played at trial over defense objections. Ms. Peters was convicted on one count of participation in a drug conspiracy and two counts of lying to the grand jury. She was sentenced to 13 years in prison.

## DISCUSSION

Appellant Peters contends that the tapes were not within the scope of the search warrant and that the officers had no probable cause to search them. She argues that only after the police listened to the tapes could they make any arguable connection to the drug case. She contends that the tapes and their contents were

---

[2] The agent testified:

It's just a routine thing that I do during a search warrant. I'll play videocassette tapes, audiocassette tapes, tapes that are in answering machines. It's almost like opening a door on a dresser where you're moving clothes around to see if anything's there. You play that tape to see if there's anything on the tape.

obtained in violation of the fourth amendment and should have been excluded from admission at trial on that basis.

Ms. Peters places primary reliance on the Supreme Court's decision in Walter v. United States, 447 U.S. 649 (1980). In Walter, the Court held that, even though the FBI had lawful possession of boxes containing videotapes, they had no authority to search the contents of the tapes by viewing them unless they had a valid warrant. Ms. Peters contends that the tapes found in her home were not "records" or "documents" under the search warrant. Therefore under Walter, the tapes only could have been listened to and seized pursuant to a second warrant.

The government contends, on the other hand, that the tapes were in fact covered by the scope of the search warrant. It says that -- in the language of the warrant -- the audio tapes were "records . . . associated with cocaine distribution. . . ." Thus, according to the government, no further probable cause and no additional warrant were needed for the officers to listen to the tapes.

The government contends that Walter was satisfied because the officers had a search warrant covering "records" of drug distribution activities. The government argues that cassette tapes by their nature are one means of keeping records and that the officers acted reasonably in listening to the tapes.

Although some substantial amount of legal maneuvering could have been obviated had the warrant been more precise, we believe that read fairly the language of the warrant in the present case was adequate to cover the tape recordings in question. As we have previously held, the requirement that a search warrant describe its objects with particularity is a standard of "practical accuracy" rather than a hypertechnical one. United States v. Lowe, 50 F.3d 604, 607 (8th Cir.), cert. denied, 116 S. Ct. 260 (1995). We

-4-

believe that the general term "records" adequately covered the search of records in audio cassette form.

On similar facts, we held in <u>United States v. Lucas</u>, 932 F.2d 1210 (8th Cir.), <u>cert. denied</u>, 502 U.S. 949 (1991), that an answering machine and its cassette tape containing conversations by drug defendants were covered by a search warrant which specified the search for "records" of a drug conspiracy. <u>See also</u> <u>United States v. Lowe</u>, 50 F.3d at 607 (warrant for "items that tend to show co-defendants or co-conspirators" broad enough to cover video tape showing defendant with guns). We believe that the holdings of <u>Lucas</u> and <u>Lowe</u> control here. <u>Accord</u> <u>United States v. Burkett</u>, 50 F.3d 16 (9th Cir. 1995) (warrant for "records of drug transactions" broad enough to cover audio tapes); <u>United States v. Gomez-Soto</u>, 723 F.2d 649 (9th Cir.) (same), <u>cert. denied</u>, 466 U.S. 977 (1984).

Accordingly, we reject Peters' argument that the tapes were illegally searched or seized and the conversations wrongly admitted. The judgment of the district court is in all respects affirmed.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-