STATE OF CONNECTICUT *v.*
HERBERT J. BROWNE III
(AC 27662)

DiPentima, Gruendel and Berdon, Js.

Argued March 26—officially released November 6, 2007

*John R. Donovan*, for the appellant (defendant).

*Russell C. Zentner*, senior assistant state's attorney, with whom were *Susan W. Hatfield*, deputy assistant state's attorney, and, on the brief, *Timothy J. Liston*, state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Herbert J. Browne III, following a plea of nolo contendere, was convicted of possession of more than four ounces of marijuana in violation of General Statutes § 21a-279 (b). The plea of

nolo contendere was conditioned on the defendant's right to challenge on appeal the validity of the search warrant. The defendant claims that the trial court improperly denied his motion to suppress evidence seized pursuant to that warrant. He argues that the warrant authorizing the search was invalid because the particularity section authorized a search for cocaine, crack cocaine and collateral items,[1] not marijuana, the intended target of the search. We agree that the warrant was invalid and reverse the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's claim. In December, 2003, the Middletown police department began an investigation of the defendant for the sale of marijuana. Police officers observed two controlled purchases of marijuana from the defendant by a confidential informant. As a result of this investigation, they applied for a warrant to search the defendant's person, automobile and residence. The warrant application requested permission to search for "cocaine, crack cocaine" and collateral items believed to be related to the sale of narcotics. The application also stated that these items were believed to constitute evidence of the crime of possession of

---

[1] The collateral items listed on the warrant include "cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other 'data' [as defined by General Statutes § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases (such as electronic equipment including VCR's, and television sets, video cameras, cameras, computers, computer peripherals and storage [devices], gold and silver jewelry which are believed to have been purchased with money derived from the sale of narcotics, financial records and 'Data', beepers, fax machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, videotapes, and developed photographs showing narcotics and/or other criminal activity."

marijuana. The affidavit in support of the warrant application detailed the affiants' knowledge of the defendant's involvement in the sale of marijuana, including the observation of two controlled purchases of marijuana from the defendant. The warrant itself did not name marijuana as an item to be seized or make any reference to marijuana. Instead, the particularity clause of the warrant listed "cocaine, crack cocaine" and collateral items as those for which police were authorized to search.[2]

The warrant was executed on December 30, 2003. Seven and one-half pounds of marijuana, two scales, proof of residence and plastic bags were seized during the search, leading to the defendant's arrest. When the warrant was executed, neither the warrant application nor the supporting affidavit accompanied the warrant because they had been placed under seal to protect the identity of a confidential informant.

The defendant filed a motion to suppress the evidence seized pursuant to the warrant. At the suppression hearing, Detective Jorge Yepes testified that cocaine, rather than marijuana, was listed as an item to be seized because he mistakenly had copied the particularity section from another warrant and failed to edit the text before submitting the affidavit and warrant to the magistrate for his determination of probable cause and signature.[3]

"The particularity clause of the fourth amendment requires that no warrants issue except those particularly describing the place to be searched, and the persons or things to be seized. U.S. Const., amend. IV. . . .

---

[2] The warrant authorized the following search: "The person of [the defendant, date of birth, December 12, 1962] for the property described in the foregoing affidavit and application to wit: Cocaine, crack cocaine, [and collateral items; see footnote 1]."

[3] Yepes testified that he drafted the application, affidavit and warrant on a computer word processor. Using the "cut and paste" function, he copied the text from a warrant in another case and inserted it into the warrant and application at issue.

With respect to the things to be seized, the standard is met if the officer executing it can identify the property sought with reasonable certainty. 1 LaFave & Israel, Criminal Procedure § 3-4 (f), quoting *State* v. *Muldowney*, 60 N.J. 594, 600, 292 A.2d 26 (1972)." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 8 Conn. App. 290, 304, 513 A.2d 710 (1986). The parties agree that the principal object of this search was marijuana, and it was not listed on the warrant. Instead, cocaine and crack cocaine were listed. This warrant, on its face, simply did not describe the property sought, and we hold that it is invalid.

The state argues that the allegations asserted by the affiants in the affidavit and warrant application reflected a consistent and continuous reference to marijuana such that the absence of marijuana from the particularity clause of both the warrant and application was merely a scrivener's error. This argument was addressed in the recent United States Supreme Court case of *Groh* v. *Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). In *Groh*, the court held: "The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. See *Massachusetts* v. *Sheppard*, 468 U.S. 981, [988 n.5, 104 S. Ct. 3424, 82 L. Ed. 2d 737] (1984) ('[a] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional'); see also *United States* v. *Stefonek*, 179 F.3d 1030, 1033 ([7th Cir.] 1999) ('[t]he Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant' . . . ) [cert. denied, 528 U.S. 1162, 120 S. Ct. 1177, 145 L. Ed. 2d 1085 (2000)]. And for good reason: 'The presence of a search warrant serves a high function,' *McDonald* v.

*United States*, 335 U.S. 451, 455 [69 S. Ct. 191, 93 L. Ed. 153] (1948), and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. . . . But in this case the warrant did not incorporate other documents by reference, *nor did either the affidavit or the application (which had been placed under seal) accompany the warrant.* Hence, we need not further explore the matter of incorporation." (Citations omitted; emphasis altered.) *Groh* v. *Ramirez*, supra, 557–58. Even if the state is correct that the affidavit and allegations sufficiently describe the items to be seized so as to inform the reader that marijuana, not cocaine, is the object of the search, here, as in *Groh*, the affidavit did not accompany the warrant.[4]

The state also argues that the warrant was valid because the executing officer had personal knowledge of the crime being investigated and knew that marijuana, not cocaine, was the focus of this search. "It is

[4] The dissent claims that our decision today is inconsistent with General Statutes § 54-33c. Section 54-33c (a) provides in relevant part: "A copy of such warrant shall be given to the owner or occupant of the dwelling . . . or place designated therein, or the person named therein. Within forty-eight hours of [the] search, a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to such owner, occupant or person. . . ." We recognize that this statutory provision makes obvious reference to those warrants that facially conform to the particularity clause of the fourth amendment and merely permits an owner, occupant or other person subject to search to obtain such supplemental information as set forth in a supporting application or affidavit.

true that the executing officer's personal knowledge of the place to be searched may 'cure' minor, technical defects in the warrant's *place* description. 2 W. LaFave, Search and Seizure [(2d Ed. 1987) § 4.5 (a), pp. 209–10]. . . . However, where the inadequacy arises not in the warrant's description of the place to be searched but rather in the things to be seized, the officer's personal knowledge of the crime may not cure the defect. See generally 2 W. LaFave §§ 4.5-4.6 (discussing the particularity requirement in relation to a warrant's description of the places to be searched and the things to be seized). This is so because the purpose of a warrant is not only to limit the executing officer's discretion, but to inform the person subject to the search what items the officer may seize. *United States* v. *Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986) [cert. denied, 479 U.S. 1086, 107 S. Ct. 1289, 94 L. Ed. 2d 146 (1987)]." (Citation omitted; emphasis added.) *State* v. *Riley*, 121 Wash. 2d 22, 28–29, 846 P.2d 1365 (1993). The United States Supreme Court has "long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches. See [*Maryland* v. *Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987)]. A particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."[5] (Internal quotation marks omitted.) *Groh* v. *Ramirez*, supra, 540 U.S. 561.

---

[5] The dissent relies on *United States* v. *Bianco*, 998 F.2d 1112, 1117 (2d Cir. 1993), cert. denied, 511 U.S. 1069, 114 S. Ct. 1644, 128 L. Ed. 2d 364 (1994), for the proposition that a warrant that is clearly lacking in particularity is not incurably defective where both the affidavit and the conduct of law enforcement personnel suggest that "the involved parties were aware of the scope of and limitations on the search." *Bianco* is easily distinguished from the present case. In *Bianco*, the affidavit was not incorporated by the warrant nor was it attached; however, it was present at the time of the search. Id., 1116–17. Here, neither the application nor the affidavit accompanied the warrant, and the warrant specifically authorized a search for cocaine and crack cocaine.

The state argues that because it had probable cause to believe that some of the collateral items were located in the house, the police officer could seize the marijuana under the plain view doctrine. "[O]bjects not named in the warrant, but found within an officer's plain view, may be seized if the . . . officers had a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant. . . . This doctrine is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Citations omitted; internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 347, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). The problem with this theory in this case is that the police were not lawfully on the premises of the defendant where the marijuana was found. See *United States* v. *George*, 975 F.2d 72, 80 (2d Cir. 1992) (noting that plain view doctrine inapplicable when "the sufficiently particularized portions make up only an insignificant or tangential part of the warrant"). Moreover, the collateral items, standing alone without the illegal drug, would not support probable cause to believe a crime was committed.[6] Accordingly, the marijuana could not be seized under the plain view doctrine.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to suppress.

In this opinion DiPENTIMA, J., concurred.

GRUENDEL, J., dissenting. The particularity clause of the fourth amendment requires that "no warrants

---

[6] In the present case, the insignificant items found were two scales, proof of residence and plastic bags, all of which are items that could be found in any home.

shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Because the search and seizure warrant in the present case mistakenly referenced the illicit drug cocaine instead of the illicit drug marijuana, the majority, relying on *Groh* v. *Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004), concludes that the warrant failed to comply with that constitutional mandate. I respectfully disagree.

Preliminarily, I note that the "standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 92, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). "Whether a warrant is sufficiently particular to pass constitutional scrutiny presents a question of law that we decide de novo." (Internal quotation marks omitted.) *State* v. *Buddhu*, 264 Conn. 449, 467, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004). That review is guided by the maxim that "[t]he description of items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit. . . . In construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 704, 759 A.2d 995 (2000).

# I

# FACTS

The following facts are pertinent to the present appeal. On December 23, 2003, a combined application and affidavit for the search and seizure warrant was presented to the Honorable Thomas V. O'Keefe, Jr., a judge of the Superior Court. It is undisputed that the warrant authorized a search for and seizure of illicit drugs. It is also undisputed that the warrant mistakenly referenced the illicit drug cocaine instead of the illicit drug marijuana.

Specifically, after listing both the narcotic cocaine and various items associated with the sale thereof, the warrant application stated that the aforementioned "is possessed, controlled, designed or intended for use or which is or has been or may be used as the means of committing the criminal offense of . . . possession of marijuana [in violation of General Statutes § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of General Statutes § 21a-277 (b)]," and "[c]onstitutes evidence of the following offense or that a particular person participated in the commission of the offense of . . . possession of marijuana [in violation of General Statutes § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of General Statutes § 21a-277 (b)] . . . ."[1] The accompanying affidavit described, in great detail, two controlled pur-

---

[1] The search and seizure warrant application stated: "The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Cocaine, crack cocaine, cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other 'data' . . . as defined by [General Statutes §] 53a-250 (8) of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases . . . such as electronic equipment including VCR's, television sets, video cameras, cameras, computers, computer peripherals and storage [devices], gold and silver jewelry which are

chases of marijuana from the defendant, Herbert J. Browne III.[2] The affidavit concluded that "it is the belief of these affiants, based on their training and experience

believed to have been purchased with money derived from the sale of narcotics, financial records and 'Data', beepers, fax machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, videotapes, and developed photographs showing narcotics and/or other criminal activity."

The application further stated that the aforementioned "is possessed, controlled, designed or intended for use or which is or has been or may be used as the means of committing the criminal offense of . . . possession of marijuana [in violation of General Statutes § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of General Statutes § 21a-277 (b)]," and "[c]onstitutes evidence of the following offense or that a particular person participated in the commission of the offense of . . . possession of marijuana [in violation of General Statutes § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of General Statutes § 21a-277 (b)] . . . ." The application stated that the aforementioned "is within or upon a certain person, place or thing, to wit: 153 Trolley Crossing located off of Westlake Road Middletown Connecticut. 153 Trolley Crossing is a multi-apartment condo complex, with the number 153 affixed to the door. The person of [the defendant, Herbert J. Browne III, date of birth, December 12, 1962], vehicle registered to [the defendant] Connecticut [registration] 567JYF Ford Taurus VIN # 1FALP52U1VG142772."

[2] The affidavit attached to the search and seizure warrant application stated that "the facts establishing the grounds for issuing a search and seizure warrant are the following: 1. That the affiant, Detective Jorge Yepes, being duly sworn, does depose and state that he is a member of the Middletown Police Department, and has been a member of said department for [approximately ten] years and that prior to the date hereof and at all times mentioned herein was acting as a member of said department. That for the past three (3) years the affiant has been assigned to the Street Crime Unit, working exclusively in the field of illicit sale and possession of Narcotics and controlled substances and other related criminal activity. The affiant has participated in numerous investigations involving the trafficking of illicit narcotics and controlled substances, which have led to the arrest and convictions of those involved. That the affiant has attended various schools of training and certification in the field of Narcotic enforcement, the affiant has become familiar with the methods and practices of narcotic violators and the deception used by them to avoid detection by members of law enforcement agencies. That the following facts and circumstances are stated from personal knowledge as well as information received from brother police officers acting in their official capacity and from official reports.

"2. That the affiant, Detective Christopher Lavoie, being duly sworn, does depose and state that he is a member of the Middletown Police Department, and has been a member of said department for [approximately] Four (4) years and that prior to the date hereof and at all times mentioned herein was acting as a member of said department. The affiant has participated in

numerous investigations involving the trafficking of illicit narcotics and controlled substances, which have led to the arrest and convictions of those involved. That the affiant has attended various schools of training and certification in the field of Narcotic enforcement, the affiant has become familiar with the methods and practices of narcotic violators and the deception used by them to avoid detection by members of law enforcement agencies. That the following facts and circumstances are stated from personal knowledge as well as information received from brother police officers acting in their official capacity and from official reports.

"3. That the Middletown Police Department Street Crime Unit continually receives information regarding illegal drug activity from reliable confidential informants, informants, arrested persons, concerned citizens, anonymous callers and brother Police officers. That over the several months The Street Crime Unit has received numerous reports from above mentioned sources that a black male named Herbert Browne resides at 153 Trolley Crossing, Middletown, CT., and is selling Marijuana from within said [apartment].

"4. That during the month of December 2003, Detective Yepes and Detective Lavoie met with a Confidential Informant. This informant has provided information in the past to other members of The Street Crime Unit. This informant is known to these Officers, and has been used over 10 times in the past. During this time, the [confidential informant] has supplied information concerning narcotic dealing, which has been corroborated and found to be true and accurate. Said [confidential informant] stated that he/she would be willing to assist the Middletown Police Street Crime Unit by making narcotic purchases from 153 Trolley Crossing in order for police to obtain a search and seizure warrant. The [confidential informant] stated to Detective Yepes, and Lavoie that [the defendant] will sell Marijuana out of his vehicle or will deliver because that way police will not be able to search his apartment.

"5. That within 48 hours of December 22, 2003, Detective Yepes and Detective Lavoie supplied the [confidential informant] with an amount of Street Crime Unit funds. The [confidential informant] was searched prior to being supplied with said funds and was found to be free of any monies or contraband. The [confidential informant] was instructed to call [the defendant] and order an amount of marijuana, this took place while Detective Yepes stood by and [overheard] the conversation that took place. Detective Lavoie was watching 153 Trolley Crossing while the [confidential informant] was ordering the marijuana, Detective Yepes informed Detective Lavoie that the [confidential informant] had just order[ed] a sum of marijuana and that [the defendant] told the [confidential informant] that he would meet with him/her in a few minutes at a location in Middletown, Connecticut. Detective Lavoie watched as [the defendant] came out of his apartment 153 Trolley Crossing, got into his vehicle [Connecticut registration] 567JYF then drove off, Detective Lavoie followed [the defendant] as he drove to the meeting location set up with the [confidential informant]. The [confidential informant] got into [the defendant's] vehicle where he/she stayed for a few seconds, these officers observed the narcotic transaction taking place between the [confidential informant] and [the defendant]. The [confidential informant] then got out of [the defendant's] vehicle to [go] meet with Detective Yepes.

and knowledge of the crimes of *Possession of Marijuana* [in violation of General Statutes § 21a-279 (c)]

"6. That at the prearranged location, the [confidential informant] handed Detective Yepes one (1) Plastic bag, which contained a green leafy and seed substances, suspected marijuana. The [confidential informant] stated upon entering [the defendant's] vehicle he/she handed [the defendant] the sum of Street Crime Funds, [the defendant] then handed him/her the plastic bag of marijuana. The [confidential informant] was again searched by Detective Yepes and found to be free of any monies and or contraband.

"7. That the suspected marijuana was field-tested by Detective Yepes utilizing a Nark # 8 field-test kit. A positive reaction to the presence of marijuana was indicated. The suspected marijuana was tagged into evidence at Middletown Police Department as tag # 2003-0657, Item #1, with a T.A.W of 2 Ounces and secured in an evidence locker.

"8. That within 48 hours of December 22, 2003, Detective Yepes and Detective Lavoie supplied the [confidential informant] with an amount of Street Crime Unit funds. The [confidential informant] was searched prior to being supplied with said funds and was found to be free of any monies or contraband. The [confidential informant] was instructed to call [the defendant] and order an amount of marijuana from him. Detective Lavoie was set up at 153 Trolley Crossing where he was conducting surveillance of the apartment, Detective Lavoie informed this officer that [the defendant's] vehicle was parked in the parking lot [outside] his apartment. The [confidential informant] then called [the defendant] and ordered an amount of marijuana from him; [the defendant] told him/her that he would meet with him/her in a few minutes at a location in Middletown, Connecticut.

"9. That [the defendant] has a past history of selling marijuana, he served Four years in jail for selling marijuana and is a convicted felon.

"10. That Detective Lavoie watched as [the defendant] walked out of his apartment at 153 Trolley Crossing, [the defendant] walked over to his vehicle [Connecticut registration] 567JYF got inside and drove off. Detective Lavoie followed [the defendant] during this time [the defendant] did not stop anywhere until he arrived at the prearranged location where the [confidential informant] was waiting for him. The [confidential informant] was observed as he/she got into [the defendant's] vehicle where he/she remained only for a few seconds. The [confidential informant] then got out of the vehicle and walked away to meet with Detective Yepes, [the defendant] left the area. Detective Lavoie followed [the defendant] who drove right back to his apartment at 153 Trolley Crossing got out of the vehicle and went inside.

"11. The [confidential informant] at the prearranged location handed Detective Yepes [one] Plastic bag with a Green Leafy and Seed substance, suspected Marijuana. The [confidential informant] stated that after he got into [the defendant's] vehicle he/she handed [the defendant] the Street Crime Funds, that [the defendant] handed him/her the marijuana. The [confidential informant] was then searched and found to be free of money and or narcotics. That the suspected marijuana was tested by Detective Yepes utilizing a Nark #8 field-test kit. A positive reaction to the presence of marijuana was indicated. The suspected marijuana was tagged into evidence at Middletown

·

and *Possession of Marijuana With Intent to Sell* [in violation of General Statutes § 21a-277 (b)], that probable cause exists that *Marijuana will be found* at 153 Trolley Crossing, Middletown, CT." (Emphasis added.)

The search and seizure warrant contained the following language: "The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and considered by the undersigned, a Judge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit established grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, named or described in the foregoing affidavit and application,

Police Department as tag # 2003-0657, Item #2, with a T.A.W of 2 Ounces and secured in an evidence locker.

"12. That it is known to these affiants that individuals involved in the illegal possession of and sale of controlled substances, would receive at their residence a large quantity of substance, which they would cut into smaller quantities for sale to other persons. These types of procedures would produce a substantial monetary gain by them. That individuals involved in the sale of narcotics do possess records of sales and/or purchases of substances. That these individuals will use scales, scrapers, plastic baggies and packaging materials to package smaller amounts of substances. These individuals keep in their homes, weapons to protect themselves, their monies and their narcotics against other persons competing in the drug trade and from police. It is known that narcotic traffickers will possess police monitoring devices to track police movements and to provide early warning of police intervention into their narcotic trade. It is also known that narcotic traffickers will utilize safes, fire boxes, safety deposit boxes and other secure areas to hide their narcotics from others competing in the drug trade and from police.

"13. That it is the belief of these affiants, based on their training and experience and knowledge of the crimes of Possession of Marijuana [in violation of General Statutes § 21a-279 (c)], and Possession of Marijuana With Intent To Sell [in violation of General Statutes § 21a-277 (b)], that probable cause exists that Marijuana will be found at 153 Trolley Crossing, Middletown, Connecticut."

or the place or thing, if any, named or described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, a Search and Seizure warrant should issue for said property. Now therefore, by authority of the State of Connecticut, I hereby command any Police Officer of a regularly organized police department, any State Policeman; or any Conservation Officer, Special Conservation Officer or Patrolman acting pursuant to [General Statutes] § 26-6 to whom these presents shall come within ten days after the date of this warrant to . . .

"[E]nter into or upon and search the place or thing described in the foregoing affidavit and application, to wit: 153 Trolley Crossing located off of Westlake Road Middletown, Connecticut. 153 Trolley Crossing is a multiapartment condo complex, with the number 153 affixed to the door. Vehicle registered to [the defendant] Connecticut [registration] 567JYF Ford Taurus VIN # 1FALP52U1VG142772. . . .

"Search the person described in the foregoing affidavit to wit: The person of [the defendant, date of birth, December 12, 1962] for the property described in the foregoing affidavit and application to wit: Cocaine, crack cocaine, cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other 'data' . . . as defined by [General Statutes § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases . . . such as electronic equipment including VCR's, television sets,

video cameras, cameras, computers, computer periph- erals and storage [devices], gold and silver jewelry which are believed to have been purchased with money derived from the sale of narcotics, financial records and 'Data', beepers, fax machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, video- tapes, and developed photographs showing narcotics and/or other criminal activity." Judge O'Keefe signed the warrant on December 23, 2003.

Later that day, the affiants to the warrant application, Detectives Jorge Yepes and Christopher Lavoie of the Middletown police department, accompanied by Ser- geant Michael Marino, executed the warrant. They stopped the defendant's vehicle approximately one mile from the defendant's apartment and informed the defen- dant that they had a search and seizure warrant "for himself and the vehicle and his apartment for drugs." The defendant responded that he "didn't have anything on him or in his car" and then volunteered that "there was drugs back at [the] apartment." When they arrived at the apartment, the defendant "showed [the officers] which key was the key to get into [the] apartment and immediately upon entering the apartment [the defen- dant] stated that the drugs were in the freezer." Inside the freezer were two bricks of marijuana, which together weighed seven and one-half pounds. The offi- cers seized the marijuana, along with two scales, multi- ple plastic bags, proof of residence and $475 in cash.

Following his arrest, the defendant filed a motion to suppress, alleging, inter alia, that "[t]he property seized is not that described in the warrant . . . ." At the sup- pression hearing, Yepes was asked why the illicit drug marijuana was not "listed as part and parcel as to the items to be seized." Yepes testified that "[w]hen I typed up the warrant I made a mistake. I did a cut and copy

section of the warrant. . . . I cut and paste from another warrant [with] this section on it and, when I put it in, I forgot to put the delete button for the cocaine and crack cocaine instead of putting the marijuana on it." On cross-examination, Yepes stated that he reviewed the warrant after its drafting and admitted that "I just missed it. I made a mistake." The court, *Holzberg, J.*, subsequently denied the motion to suppress.

## II

## *GROH* v. *RAMIREZ*

In *Groh* v. *Ramirez*, supra, 540 U.S. 551, the United States Supreme Court concluded that a warrant that fails to identify *any* of the items intended to be seized is "plainly invalid." Id., 557. The majority relies on that precedent in rejecting the state's contention that the reference to cocaine "was an obvious misprint or scrivener's error." Because the present case is patently distinguishable from *Groh*, I believe that reliance is misplaced.

Significantly, the warrant in *Groh* "failed to identify any of the items that [the Federal Bureau of Investigation (FBI)] intended to seize." *Groh* v. *Ramirez*, supra, 540 U.S. 554. As a result, the United States Supreme Court concluded that the warrant "failed altogether. . . . [It] was deficient in particularity because it provided no description of the *type* of evidence sought." (Emphasis added; internal quotation marks omitted.) Id., 557. The court emphasized that "[t]his warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. . . . [T]he warrant did not describe the items to be seized *at all*." (Emphasis in original.) Id., 558; see also 2 W. LaFave,

Search and Seizure (4th Ed. 2004) § 4.6 (a), p. 619 (noting *Groh* "covers . . . only" situation in which warrant did not describe items to be seized at all and "leaves the others for future treatment by lower courts").

This case is not *Groh*. Here, the warrant described numerous items in addition to illicit drugs.[3] Hence, it cannot be said that the warrant in the present case failed to describe the items to be seized at all. Notably, the warrant provided ample description of " 'the type of evidence sought' "; *Groh* v. *Ramirez*, supra, 540 U.S. 557; which, in this case, was illicit drugs and items relating to the sale thereof.

Moreover, this case presents that situation envisioned by the *Groh* court but inapplicable to the facts of that case: a mere typographical error. At the suppression hearing, Yepes admitted to making such an error in preparing the warrant. The warrant application and affidavit contained repeated references to the illicit drug marijuana, described two controlled purchases of marijuana from the defendant and alleged violations of §§ 21a-279 (c) and 21a-277 (b), statutory provisions

---

[3] In addition to illicit drugs, the warrant authorized a search for cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other 'data' . . . as defined by [General Statutes § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases . . . such as electronic equipment including VCR's, television sets, video cameras, cameras, computers, computer peripherals and storage [devices], gold and silver jewelry which are believed to have been purchased with money derived from the sale of narcotics, financial records and 'Data', beepers, fax machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, videotapes, and developed photographs showing narcotics and/or other criminal activity." The search of the defendant's apartment led to the seizure of seven and one-half pounds of marijuana, two scales, multiple plastic bags, proof of residence and $475 in cash.

pertaining to the possession and sale of marijuana. Nevertheless, by "cutting and pasting" in the drafting of the warrant, Yepes mistakenly named cocaine instead of marijuana in the warrant itself. His is a classic example of the typographical error.

That the *Groh* court, in analyzing the warrant in that case, distinguished between, on the one hand, failing to describe any items to be seized and, on the other hand, mere technical mistakes or typographical errors strongly suggests that such mistakes do not, a fortiori, run afoul of the particularity requirement. As the United States Court of Appeals for the Eight Circuit has observed, "the requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." *United States* v. *Peters*, 92 F.3d 768, 769–70 (8th Cir. 1996); cf. *United States* v. *Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965) ("the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract"). "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States*, 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 436 (1948); see also *Wong Sun* v. *United States*, 371 U.S. 471, 481–82, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) ("[t]he arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police").

The warrant application and affidavit presented to Judge O'Keefe detailed the alleged possession and sale of marijuana by the defendant. Judge

O'Keefe reviewed those documents and signed the warrant application. "The Constitution protects property owners . . . by interposing, ex ante, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police." (Internal quotation marks omitted.) *United States* v. *Grubbs*, 547 U.S. 90, 99, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006); see also *Groh* v. *Ramirez*, supra, 540 U.S. 575–76 (Thomas, J., dissenting) ("in contrast to the case of a truly warrantless search, where a warrant [due to a mistake] does not specify on its face the particular items to be seized but the warrant application passed on by the magistrate judge contains such details, a searchee still has the benefit of a determination by a neutral magistrate that there is probable cause to search a particular place and to seize particular items"). The defendant was afforded that protection in the present case.

A further difference between the present case and *Groh* involves notice. "The manifest purpose of [the] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland* v. *Garrison*, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987); accord *Boyd* v. *United States*, 116 U.S. 616, 624–27, 6 S. Ct. 524, 29 L. Ed. 746 (1886). Furthermore, "[a] particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." (Internal quotation marks omitted.) *Groh* v. *Ramirez*, supra, 540 U.S. 561. Although the FBI agent in *Groh* argued that the goals of the particularity requirement were served

because he orally described to the residents of the property to be searched the items for which he was searching, the residents disputed that account. Id., 562. Accordingly, the Supreme Court concluded that "this case presents no occasion even to reach this argument . . . ." Id. By contrast, it is undisputed that when the officers first contacted the defendant on December 23, 2003, they informed him that they had a search and seizure warrant "for himself and the vehicle and his apartment *for drugs*." (Emphasis added.) The defendant responded that although he "didn't have anything on him or in his car . . . there was *drugs* back at [the] apartment." (Emphasis added.) Indeed, upon entering the apartment, the defendant immediately volunteered that "*the drugs* were in the freezer." (Emphasis added.) Those exchanges, to me, indicate that the defendant knew precisely what items the officers intended to seize, namely, the illicit drug marijuana. In light of that record, the goals of the particularity clause were satisfied in the present case.[4]

The decision of the United States Court of Appeals for the Second Circuit in *United States* v. *Bianco*, 998 F.2d 1112 (2d Cir. 1993), cert. denied, 511 U.S. 1069, 114 S. Ct. 1644, 128 L. Ed. 2d 364 (1994), is illuminating. In that case, the warrant plainly was deficient, as it "contained no particular description of items and made no mention of any criminal statute or criminal conduct." Id., 1116. Nevertheless, the Second Circuit explained that "[t]he failure of the warrant to particularly describe the items to be seized does not render the warrant incurably defective. . . . In this case, while the warrant refers to the affidavit there is no express language of incorporation. Nor does it appear that the affidavit

---

[4] "[A] judgment as to the sufficiency of a description of items to be seized under a search warrant . . . necessitates an evaluation of the description in question in terms of the purposes underlying the Fourth Amendment requirement of particularity." 2 W. LaFave, supra, p. 605.

was physically attached to the warrant. However, under the facts of this case, the functional purposes of those two requirements—to insure that all parties involved are informed of the scope of and limits upon the authorized search—were fully satisfied. . . . Warrants must be read in a commonsense fashion . . . and we should not adhere to formal requirements of incorporation and attachment where as here, it is clear that the involved parties were aware of the scope of and limitations on the search." (Citations omitted; internal quotation marks omitted.) Id., 1116–17. That logic applies with equal force to the present case.

## III

## INCORPORATION

*Groh* is further distinguishable in that the warrant in that case did not incorporate other documents by reference. *Groh* v. *Ramirez*, supra, 540 U.S. 558. In the present case, the warrant incorporated by reference the critical parts of the warrant application and accompanying affidavit. The warrant began by directly referencing the warrant application and accompanying affidavit, stating: "The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and considered by the undersigned, a Judge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit established grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, described in the foregoing affidavit and application, or the place or thing, if any, named or described in the foregoing

affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, a Search and Seizure warrant should issue for said property." It further commanded an officer to "enter into or upon and search the place or thing described in the foregoing affidavit and application," and to "[s]earch the person described in the foregoing affidavit . . . for the property described in the foregoing affidavit and application . . . ."

In *State* v. *Santiago*, 8 Conn. App. 290, 513 A.2d 710 (1986), this court held that almost identical language "clearly incorporated the critical parts of the application and affidavit by reference." Id., 306. Unlike the present case, in which the narcotic cocaine and numerous other items were specifically listed, in *Santiago* "the preprinted box before the words, 'enter into or upon and search the place,' and the space following the phrase, 'to wit,' was left blank." Id., 300. Despite the fact that the warrant identified not a single item, we concluded that the incorporation of the warrant application and affidavit by reference cured any lack of particularity therein. Id., 304.

The majority declares that "[e]ven if the state is correct that the affidavit and allegations sufficiently describe the items to be seized so as to inform the reader that marijuana, not cocaine, is the object of the search, here, as in *Groh*, the affidavit did not accompany the warrant." For two reasons, that logic troubles me.

First, when the majority refers to informing "the reader" that marijuana was the object of the search, I am unsure whether it is referring to the neutral and detached judicial officer required under the fourth amendment; see *Johnson* v. *United States*, supra, 333 U.S. 13–14; or to the searchee, in this case, the defendant. If the latter, that statement is untenable, as the fourth amendment does not require an executing officer

to present a copy of the warrant to the property owner before conducting a search. *United States* v. *Grubbs, supra*, 547 U.S. 98; see also *Dalia* v. *United States*, 441 U.S. 238, 257, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979) ("the specificity required by the Fourth Amendment does not generally extend to the means by which warrants are executed"). As the United States Supreme Court recently observed, "[t]he Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police." (Internal quotation marks omitted.) *United States* v. *Grubbs, supra*, 99.

Second, whether an incorporated warrant application and affidavit must accompany the warrant at execution is a question presently unresolved as a matter of federal constitutional law. In a mere sentence, the majority imposes such a requirement. Contrary to the majority's citation thereto, *Groh* did not articulate that requirement.[5] *Groh* stated: "[I]n this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation."[6] *Groh* v. *Ramirez, supra*, 540 U.S. 558.

The proposition espoused by the majority was advanced by the defendant in *United States* v. *Hurwitz,*

---

[5] One noted commentator has questioned the soundness of *Groh*: "Because of the many weaknesses in the *Groh* decision, it is to be seriously doubted whether the case was correctly decided. In any event, the ambiguities in the majority's analysis are such that one can only hope the Court will have occasion to revisit the subject and provide lower courts with more guidance than *Groh* affords." 2 W. LaFave, supra, p. 619.

[6] The *Groh* court specifically indicated that the constitutional violation at issue was the facial insufficiency of the warrant, not the failure to incorporate the affidavit and to bring it during the search. See *Groh* v. *Ramirez, supra*, 540 U.S. 564 ("even a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal").

459 F.3d 463 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit summarily rejected that contention: "According to [the defendant], the [a]ttachment itself must have accompanied the warrant at the time of the search for it to be construed to supply the particulars lacked by the search warrant. [The defendant] bases his argument on the language of *Groh* suggesting that the majority of the Courts of Appeals permit a general warrant to be cured by reference to a separate document only if both requirements—that words of incorporation be used and that the incorporated document accompany the warrant—are met. . . . Thus, [the defendant] reads *Groh* as establishing a definitive two-part rule for validating a warrant by incorporation of a separate document. *Groh*, however, establishes no such rule."[7] (Citation omitted.) Id., 471; accord *Baranski* v. *Fifteen Unknown Agents*, 452 F.3d 433, 444 (6th Cir. 2006) ("*Groh* did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one"), cert. denied, 549 U.S. 1321, 127 S. Ct. 1908, 167 L. Ed. 2d 565 (2007); *United States* v. *Gamboa*, 439 F.3d 796, 807 (8th Cir.) ("*Groh* did not rule upon the validity of a warrant that sufficiently incorporated a second document in order to meet the particularity requirement"), cert. denied, 549 U.S. 1042, 127 S. Ct. 605, 166 L. Ed. 2d 449 (2006).

As the Fourth Circuit noted in *Hurwitz*, our federal Courts of Appeals are divided on the question of

[7] This court's decision in *State* v. *Santiago*, supra, 8 Conn. App. 290, likewise sheds little light on the issue. Because the affidavit in that case was incorporated by reference and was attached to the warrant, we held that the warrant was valid. Id., 304. The facts of that case did not present the question of whether an incorporated warrant application and affidavit that does not accompany the warrant at execution renders the warrant invalid, nor did we address that issue. As we recently noted, "[i]t is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal." *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739 (2007).

whether an incorporated warrant application and affidavit must accompany the warrant at the time of execution. It stated: "We recognize that a majority of our sister Circuit Courts of Appeals appear to require the satisfaction of both conditions before allowing a separate document to be read as part of the search warrant. See *Bartholomew* v. *Pennsylvania*, 221 F.3d 425, 428–29 (3d Cir. 2000); *United States* v. *McGrew*, 122 F.3d 847, 849–50 (9th Cir. 1997); *United States* v. *Dahlman*, 13 F.3d 1391, 1395 (10th Cir. 1993) [cert. denied, 511 U.S. 1045, 114 S. Ct. 1575, 128 L. Ed. 2d 218 (1994)]; *United States* v. *Dale*, 991 F.2d 819, 846–47 [(D.C. Cir.), cert. denied, 510 U.S. 1030, 114 S. Ct. 650, 126 L. Ed. 2d 607 (1993)]; *United States* v. *Morris*, 977 F.2d 677, 681 [n.3] (1st Cir. 1992) [cert. denied, 507 U.S. 988, 113 S. Ct. 1588, 123 L. Ed. 2d 155 (1993)]; *United States* v. *Curry*, 911 F.2d 72, 77 (8th Cir. 1990) [cert. denied, 498 U.S. 1094, 111 S. Ct. 980, 112 L. Ed. 2d 1065 (1991)]. In this circuit, however, it is sufficient either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself." *United States* v. *Hurwitz*, supra, 459 F.3d 471; see also *Baranski* v. *Fifteen Unknown Agents*, supra, 452 F.3d 449–50; *United States* v. *Shugart*, 117 F.3d 838, 845 (5th Cir. 1997); cf. *United States* v. *Bianco*, supra, 998 F.2d 1117 (courts should not adhere to formal requirements of incorporation and attachment where parties were aware of scope of and limitations on search); *United States* v. *Wuagneux*, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982) (ambiguity in warrant could be cured by affidavit not incorporated by reference or attached to warrant), cert. denied, 464 U.S. 814, 104 S. Ct. 69, 78 L. Ed. 2d 83 (1983). In expanding the scope of the fourth amendment to require that an incorporated warrant application and affidavit must accompany the warrant at the time of execution, the majority fails to even acknowledge this split among our federal courts.

On this divided issue, I side with the minority of jurisdictions that concludes that the particularity clause does not require that an incorporated warrant application and affidavit must accompany the warrant at the time of execution. Indeed, Connecticut law already mandates that, generally, "[w]ithin forty-eight hours of [the] search, a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to [the] owner, occupant or person. . . ." General Statutes § 54-33c (a). The proposition today enunciated by the majority—that an incorporated warrant application and affidavit must accompany the warrant at the time of execution for the warrant to be valid—is inconsistent with that Connecticut statute.

Furthermore, that proposition is not to be found in the United States constitution. Particularly persuasive is the recent decision of the United States Court of Appeals for the Sixth Circuit in *Baranski* v. *Fifteen Unknown Agents*, supra, 452 F.3d 433, which observed that "[t]he Warrant Clause contains four textual requirements, each of which places restrictions on the issuance of a warrant. '[N]o Warrants shall *issue*,' it says, 'but upon [1] probable cause, [2] supported by Oath or affirmation, and [3] particularly describing the place to be searched, and [4] the persons or things to be seized.' U.S. Const. amend. IV. . . . By their terms, each of these requirements must be satisfied upon the 'issu[-ance]' of the warrant, and nothing about the text of the clause suggests that a warrant valid upon issuance may become invalid upon execution when the scope and timing of the search is conducted in accordance with the terms of the warrant." (Emphasis in original.) Id., 440–41. The core protection afforded by the particularity clause is the insertion of a neutral and detached magistrate between state and citizen. See *United States* v. *Grubbs*, supra, 547 U.S. 99. Although the reasonableness clause of the fourth amendment certainly applies

to the execution of a search and seizure warrant; see, e.g., *Dalia* v. *United States*, supra, 441 U.S. 257; by its plain language, the particularity clause applies only to the issuance of a warrant. Neither the defendant nor the majority refer to any authority indicating otherwise. As a result, I would conclude that a search and seizure warrant that incorporates by reference the warrant application and affidavit supplies the requisite particularity to the search warrant, regardless of whether those documents accompanied the search warrant at the time of execution.

## IV

## ILLICIT DRUGS

The majority opinion suffers an additional infirmity. Irrespective of the *Groh* precedent and the issue of incorporation, I would conclude that the warrant was valid in light of the illegal nature of the item in question.

In my view, it is unnecessary for a search and seizure warrant to identify the particular illicit drug sought to be seized. As other courts have held, "[i]f the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character." *People* v. *Schmidt*, 172 Colo. 285, 290, 473 P.2d 698 (1970); see also *Carlton* v. *State*, 418 So. 2d 449, 450 (Fla. App. 1982), aff'd, 449 So. 2d 250 (Fla. 1984); *State* v. *O'Campo*, 103 Idaho 62, 65, 644 P.2d 985 (App. 1982); *State* v. *Clark*, 281 N.W.2d 412, 416 (S.D. 1979); *State* v. *Henning*, 975 S.W.2d 290, 296 (Tenn. 1998); *Gonzales* v. *State*, 577 S.W.2d 226, 229 (Tex. App.), cert. denied, 444 U.S. 853,

100 S. Ct. 109, 62 L. Ed. 2d 71 (1979); 79 C.J.S., Searches and Seizures § 239 (2006); J. Hall, Search and Seizure (1st Ed. 1982) § 6:13, p. 190. The key distinction is that the items sought in the present case were illegal drugs and items related to the sale thereof. For that reason, warrants describing the items to be seized as " 'drug paraphernalia' "; *United States* v. *Moore*, 149 F.3d 773, 783 (8th Cir.), cert. denied, 525 U.S. 1030, 119 S. Ct. 570, 142 L. Ed. 2d 475 (1998); "all that is relating . . . to drugs and narcotics and any other object that is in violation of the law"; *United States* v. *Morris*, supra, 977 F.2d 680; " 'controlled substances and other drug related paraphernalia, and materials for packaging controlled substances' "; *United States* v. *Spears*, 965 F.2d 262, 277 (7th Cir.), cert. denied, 506 U.S. 989, 113 S. Ct. 502, 121 L. Ed. 2d 438 (1992); " 'controlled dangerous substances' "; *United States* v. *Sierra*, 585 F. Sup. 1236 (D.N.J.), aff'd, 755 F.2d 925 (3d Cir. 1984); " 'all controlled substances' "; *Carlton* v. *State*, supra, 450; "controlled substances"; *State* v. *O'Campo*, supra, 65–66; " 'drugs and drug paraphernalia' "; *State* v. *Broell*, 249 Mont. 117, 122, 814 P.2d 44 (1991); " 'any and all controlled substances which may be kept there contrary to law' "; *State* v. *Quintana*, 87 N.M. 414, 416, 418, 534 P.2d 1126 (App.), cert. denied, 88 N.M. 29, 536 P.2d 1085, cert. denied, 423 U.S. 832, 96 S. Ct. 54, 46 L. Ed. 2d 50 (1975); " 'narcotic drugs, the possession of which is a crime' "; *State* v. *Foye*, 14 N.C. App. 200, 205–206, 188 S.E.2d 67 (1972); " 'any illegal drugs' "; *State* v. *Williams*, 297 S.C. 404, 407–408, 377 S.E.2d 308 (1989); " 'drugs or dangerous drugs . . . unlawfully kept and possessed' "; *Gonzales* v. *State*, supra, 230; " 'any and all controlled substances' "; *State* v. *Chambers*, 88 Wash. App. 640, 642, 648, 945 P.2d 1172 (1997); " 'controlled substances and paraphernalia used [with] controlled substances' "; *Lobatos* v. *State*, 875 P.2d 716, 723 (Wyo. 1994); all have been upheld as not violative of the particularity clause.

The Court of Appeals of Washington explained the rationale for that distinction in *State* v. *Chambers*, supra, 88 Wash. App. 640, stating: "[T]he risk of an invasion of constitutionally protected privacy is minimal when there is probable cause to search for a controlled substance. Officers executing a warrant for marijuana are authorized to inspect virtually every aspect of the premises. . . . If, during their search they discover another illegal substance, the nonspecified substance would be subject to seizure under the plain view doctrine. . . . Thus, officers executing the warrant at hand had no broader discretion to search than they would have had if the warrant had specified 'marijuana.' " (Citations omitted.) Id., 645. Likewise, the Supreme Court of South Carolina has noted that "illegal drugs is not such a general term that it allows for abuse and unbridled discretion by law enforcement personnel or allows for a general search." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 297 S.C. 408.

It is enough, then, for a warrant to describe the item to be seized as "illicit drugs," "illegal narcotics," "controlled substances" or the like. The warrant in the present case went a step further, mistakenly identifying the narcotic cocaine. I would not hold that mistake to be fatal to the constitutionality of the warrant. "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. . . . Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States* v. *Ventresca*, supra, 380 U.S. 108; *State* v. *Montgomery*, supra, 254 Conn. 704 (" 'practical margin of flexibility' " required in construing terms of warrant). "[B]ecause a search warrant provides the detached scrutiny of a neutral magistrate . . . we have expressed a strong preference for warrants and declared that in a doubtful or marginal case a search under a warrant may be sustainable where

without one it would fall." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 113, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002).

Practical problems abound with the majority's decision today. In the present case, the illicit drug cocaine mistakenly was named instead of the illicit drug marijuana, which rendered the warrant invalid under the majority's reasoning. Applying that reasoning to future cases, what becomes of the warrant that mistakenly lists "d-lysergic acid diethylamide" instead of "peyote," or "cocaine" instead of "crack cocaine"? All are illicit drugs under Connecticut law. See General Statutes § 21a-240 (8). Striking down an otherwise valid warrant due to such tenuous distinctions is a needless exercise in hypertechnical analysis.[8]

The protection afforded by the particularity clause centers on the intervention of a neutral and detached magistrate. *United States* v. *Grubbs*, supra, 547 U.S. 99; *Johnson* v. *United States*, supra, 333 U.S. 13–14. Judge O'Keefe was presented with a warrant application and affidavit that chronicled two separate drug transactions involving the sale of marijuana by the defendant. To paraphrase the Supreme Court of Montana, upon reviewing the search warrant, warrant application and affidavit together, the fact that the officers were to search for, and seize, illicit drugs is inescapable. *State* v. *Broell*, supra, 249 Mont. 122. Indeed, the warrant authorized officers to search 153 Trolley Crossing and seize illicit drugs found therein. To invalidate a warrant premised upon an application and affidavit that detailed

---

[8] See, e.g., *State* v. *O'Campo*, supra, 103 Idaho 62, in which the Court of Appeals of Idaho rejected the defendant's contention that a warrant that listed "PCP" but not "liquid PCP" lacked particularity. The court stated: "To employ such an artificial distinction would ignore the call of the United States Supreme Court for commonsense and realistic interpretations." (Internal quotation marks omitted.) Id., 66.

the possession and sale of marijuana by the defendant but, due to typographical error, mistakenly referenced cocaine is the quintessential exaltation of form over substance and is inconsistent with a practical application of the particularity clause. Accordingly, I cannot join my colleagues in concluding that the warrant was invalid under the fourth amendment.